*In re* MARRIAGE OF KATHLEEN MACZKO, Petitioner-Appellee, and ROBERT E. MACZKO, Respondent-Appellant.

First District (3rd Division)   No. 1—90—2698

Opinion filed October 28, 1992.

Carroll A. Barry, of Feinberg & Barry, P.C., and Ilene E. Shapiro, both of Chicago, for appellant.

Kathleen Maczko, of Arlington Heights, appellee *pro se.*

JUSTICE TULLY delivered the opinion of the court:

Respondent-appellant, Robert E. Mazcko, appeals from the judgment of dissolution of marriage regarding the financial issue. He

argues that: (1) the trial court abused its discretion in awarding child support which exceeds the statutory guidelines; (2) the trial court abused its discretion because it based the child support award on a previous income level of the respondent; (3) the trial court abused its discretion in awarding reviewable maintenance to the petitioner for a period of three years because it is not within the statutory guidelines for maintenance awards; (4) the trial court abused its discretion in awarding the petitioner approximately 100% of the marital estate in view of the fact that the marriage was approximately 20 years in duration and the respondent had made substantial contributions to the marital estate; and (5) the trial court's findings of dissipation of marital assets by the respondent were unclear and contrary to the manifest weight of the evidence.

■ Initially, we note the petitioner-appellee, Kathleen Maczko, has filed a brief which does not conform to the requirements of Illinois Supreme Court Rule 341(f), which states:

> "The brief for the appellee and other parties shall conform to the foregoing requirements, except that items (2) [and] (6) of paragraph (e) of this rule need not be included except to the extent that the presentation by the appellant is deemed unsatisfactory." (134 Ill. 2d R. 341(f).)

However, under the rule enunciated in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493, this court may consider the merits of this appeal.

The parties were married on April 29, 1968. Kathleen filed for a petition for dissolution of marriage on September 10, 1987. Four children were born to the couple during the marriage. As of the date of this appeal, three children have reached the age of majority. The fourth child, a son, was born April 20, 1982, and resides with the petitioner. At the time the trial commenced, Kathleen was age 45 and Robert was age 44. A judgment for dissolution of marriage was entered on February 14, 1990, by Judge John R. Ryan.

Robert first argues the trial court abused its discretion in awarding child support in excess of the statutory guidelines. As of the date of this appeal, the elder son, Richard Edward, attained the age of 18 on January 22, 1991. The only remaining child eligible for support is the younger son, John Paul, born April 20, 1982. The trial court ordered Robert to pay 25% of his net income or $609 per month, whichever is greater. This figure represents a reduction ordered by the court pursuant to a post-trial motion which reduced the child support from $710 per month to $609 per month to correct a previous error in the calculation of Federal withholding taxes.

Crucial to the consideration of the financial issues in this case is

the change in Robert's income which resulted in a substantial salary reduction. Robert asked for a change of position with his employer, Xerox Corporation, where he had been employed for approximately 20 years. Robert argues that the job change was required because he developed an arthritic condition which was aggravated by the demands of his previous position. The trial court held that Robert's job change was voluntary and calculated the child support on his previous salary. Robert's prior gross income was $800 per week or $43,942 per year. His current salary is approximately $28,500. From his gross weekly pay of $544.40, the following deductions are made: $203.85 for child support, $5.07 for child arrearage payment, $2 for the Crusade of Mercy, and $152.69 for taxes. $180.79 per week remains as net disposable income.

Section 505 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 505) provides a statutory guideline of 20% of the supporting party's net income. An award of maintenance and child support is a matter within the sound discretion of the trial court, and the award will not be disturbed on appeal absent an abuse of discretion. *(In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 812, 439 N.E.2d 1005, 1008.) Section 505(a) of the Act provides in pertinent part:

"(a) In a proceeding for dissolution of marriage, *** the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support, without regard to marital misconduct. ***

(1) The court shall determine the minimum amount of support by using the following guidelines:

| Number of Children | Percent of Supporting Party's Net Income |
|---|---|
| (1) | 20% |

* * *

(2) The above guidelines shall be applied in each case unless the court, after considering evidence presented on all relevant factors, finds a reason for deviating from the guidelines. Relevant factors may include but are not limited to:

(a) the financial resources of the child;

(b) the financial resources and needs of the custodial parent;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child, and his educational needs; and

(e) the financial resources and needs of the non-custodial parent." Ill. Rev. Stat. 1989, ch. 40, pars. 505(a)(1), (a)(2).

If the court order orders a lower award, based on consideration of the factors in paragraphs (2)(a) through (2)(e) of subsection (a) of this section, it shall make express findings as to the reason for doing so. The guidelines may be exceeded by the court without express findings or by an agreement of the parties. Ill. Rev. Stat. 1987, ch. 40, pars. 505(a)(1), (a)(2).

The statutory guidelines are not to be mechanically applied in each and every case before the court. (*In re Marriage of Tatham* (1988), 173 Ill. App. 3d 1072, 1093, 527 N.E.2d 1351, 1363.) The burden of presenting evidence in a child support hearing is placed on the parent who wished to shift the noncustodial parent's contribution below or above the specified percentages. (*In re Marriage of Blaisdell* (1986), 142 Ill. App. 3d 1034, 1041, 492 N.E.2d 622, 627.) Both parents have the financial responsibility to support a minor child. (*In re Marriage of Leva* (1983), 125 Ill. App. 3d 55, 56, 460 N.E.2d 1179, 1180.) The parent with the disproportionately greater income than the other should bear a greater cost of support, especially if it is the noncustodial parent who is earning the greater income. *Sullivan v. Sullivan* (1978), 57 Ill. App. 3d 958, 963-64, 373 N.E.2d 829, 833.

Robert argues the only finding by the trial court regarding his change of employment was that it was voluntary. No medical testimony or evidence was offered at trial to refute Robert's medical condition which, he maintains, necessitated his job change. No showing of bad faith or intention to avoid the support responsibilities to his family was made by Kathleen's counsel at trial. "[E]conomic reversals as a result of changes in employment or bad investments, if made in good faith, may constitute a material change in circumstances sufficient to warrant a modification of a child support order." (*In re Marriage of Hardy* (1989), 191 Ill. App. 3d 685, 690, 548 N.E.2d 139.) In *Hardy,* this court was also confronted with a voluntary job change because of detrimental health. This court held that such a change does not necessarily equate with bad faith or intention to evade familial support responsibilities. The court in *In re Marriage of Kowski* (1984), 123 Ill. App. 3d 811, 463 N.E.2d 848, further held that when a voluntary job change is precipitated by health reasons and the change results in substantial reduction of income, a corresponding modification of support responsibilities may be justified.

■ We find *Kowski* to be controlling relative to Robert's job change. Robert maintained that he changed his position with a company he had been employed with for approximately 22 years because of the onset of a deteriorating arthritic condition. At trial, Robert's counsel produced the deposition of his physician, Dr. Kristy, who wrote a letter attesting to his arthritic condition. Dr. Kristy was

hesitant to write this letter for Robert until he had radiographic substantiation of the arthritic condition. It was only after Dr. Kristy received the X-ray report which substantiated the arthritic condition of Robert that he agreed to write a letter detailing the need for a change of employment positions to Xerox. This, we find, inherent in the precaution exercised by Dr. Kristy, was the safeguard against a bad-faith manipulation of Robert's health condition to avoid familial support responsibilities. Therefore, we vacate the support order of the trial court and remand for reconsideration. At rehearing, the trial court should consider the emancipation of the older son. The support responsibilities of Robert should be recalculated to reflect the statutory 20% guideline established in section 505(a) of the Act. Robert's present income should be used to calculate the amount of the child support, not his previous amount of income.

Respondent next argues the trial court abused its discretion in awarding reviewable maintenance to the petitioner for a period of three years because it was contrary to the statutory guidelines.

■ Kathleen is employed as a secretary for a real estate firm. She earns approximately $18,000 per year. She has been employed in this capacity for approximately two years. She has not expressed any intentions of changing her position or furthering her education. The order of the trial court does not provide for automatic termination at the end of the three-year period.

Section 504 of the Act, entitled "Maintenance," provides that the following must be met before a court may award maintenance:

"(a) in a proceeding for dissolution of marriage or legal separation or declaration of invalidity of marriage, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse, only if it finds that the spouse seeking maintenance:

(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home; or

·(3) is otherwise without sufficient income." Ill. Rev. Stat. 1987, ch. 40, par. 504(a).

The amount and duration of a maintenance award, without regard to marital misconduct, is to be determined after consideration of all relevant factors including:

"(1) the financial resources of the party seeking maintenance,

including marital property apportioned to him, and his ability to meet his own needs independently ***;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and physical and emotional condition of both parties; [and]

(6) the ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance." Ill. Rev. Stat. 1987, ch. 40, par. 504(b). *Faris v. Faris* (1986), 142 Ill. App. 3d 987, 492 N.E.2d 645.

Statutory rehabilitation contemplates a specific goal. When the goal of rehabilitative maintenance has been achieved, a petition for termination should be granted. *In re Marriage of Frus* (1990), 202 Ill. App. 3d 844, 846, 560 N.E.2d 638, 639; *In re Marriage of Henzler* (1985), 134 Ill. App. 3d 318, 480 N.E.2d 147.

In this case we do not find the award of maintenance to be an abuse of the discretion of the trial court. Accordingly, we affirm the maintenance award.

Robert next argues that the trial court abused its discretion in awarding Kathleen approximately 100% of the marital estate. This division by the trial court reflects an implication of dissipation of marital assets by Robert. The focus of the dissipation was funds received by the couple from the sale of a rental residence in Arlington Heights, Illinois. The funds were initially under the control of both parties. Kathleen alleged that subsequent to the initial account deposit of the funds, Robert took control of the funds by moving the funds to various accounts. Robert testified at trial that the funds were used for marital purposes and that no dissipation occurred. While the trial court did not make a specific finding of dissipation, it proceeded to distribute the marital properties as though a dissipation of funds had, in fact, occurred.

■ We find an evaluation of the facts clearly indicates an abuse of discretion by the trial court in awarding the petitioner approximately 100% of the marital estate. Sections 503, 504, and 505 of the Act allow the trial court to consider maintenance and support requirements in evaluating the division of the marital estate. A dispositional order of the court for marital assets must be equitable. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238.) Section 503(c) of the Act incorporates a partnership theory of marriage. Therefore, the order of the court disposing of the parties' property

should recognize and compensate each party for his or her contribution to the marriage. (*In re Marriage of Goforth* (1984), 121 Ill. App. 3d 673, 459 N.E.2d 1374.) The court should seek, in distributing the marital estate, to place the parties in a position from which they can begin anew, in addition to providing adequate support for the children. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.) The decision of the trial court will not be disturbed absent an abuse of discretion. *In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 482 N.E.2d 1022.

The trial court essentially reasoned the respondent had dissipated approximately $41,700. However, we find this reasoning inconsistent and unclear. The trial court held there were marital funds not accounted for solely under the control of Robert. The trial court said: "[I]t is difficult, if not impossible, for this court to believe the $41,695 has been dissipated ***." Yet, the court ordered a distribution of marital assets which essentially reflected a dissipation of approximately $41,000 by Robert.

To effect an equitable distribution of property, the court found the value of the equity in the marital residence was $53,565, the values of the bank accounts were $15,230.25; $1,100; and $1,540, and the profit sharing balance was approximately $10,900. Dividing these amounts in half results in a total of approximately $41,000. The trial court felt that this sum still was not adequate to compensate for the alleged dissipation of funds by Robert. Therefore, the court proceeded to further allocate to Kathleen all of the household furnishings and one-half of Robert's pension plan funds which contained a balance of approximately $99,865. The court's distribution resulted in Kathleen receiving essentially all of the marital estate and one-half of Robert's pension. The trial court determined Kathleen's share of the marital estate to be approximately $130,000 ($80,000 plus $50,000 in pension benefits) and Robert's share to be approximately $50,000, one-half of his pension benefits.

This court had held in *In re Marriage of Calisoff* (1988), 176 Ill. App. 3d 721, 726, 531 N.E.2d 810, 813, that such an inequitable distribution does not "put respondent in a position from which he could start anew." In *Calisoff* this court held an award of approximately $169,000 to the wife versus $37,000 to the husband was an abuse of discretion by the trial court. Coupled with the fact that the trial court also charged Robert with the responsibilities of child support, which included responsibility for the medical and dental expenses of the minor children, and spousal support, such a distribution by the trial court could not be said to allow Robert to start anew in violation of the aforementioned principles. The order of the trial court resulted

in a gross income of $31,320 per year for Kathleen and $14,968 per year for Robert, not including possible outstanding medical and dental expenses of the children. We find a more equitable distribution would be to grant the marital residence and the various bank accounts to Kathleen, but to award her only 25% of Robert's pension instead of one-half of the pension benefits. Therefore, we reduce the order of the trial court as to Kathleen's entitlement to a one-half share in Robert's pension plan, to an entitlement of 25% from his pension.

It should be noted that Kathleen has been awarded the marital residence which is an appreciable asset. The pension benefits of Robert are at best a speculative asset. Although the pension is apparently vested, in this era, many such pensions have disappeared along with the sponsoring company. Robert spent the majority of his life working for his pension, and he should not be stripped of this financial asset. On the other hand, the award of the marital residence to Kathleen in this instance is fair due to the dissipation of marital assets by Robert.

Affirmed in part and reversed in part and vacated in part.

GREIMAN, P.J., and CERDA, J., concur.