NO. 4-96-0683

                         IN THE APPELLATE COURT

                               OF ILLINOIS

                             FOURTH DISTRICT

In Re:  the Marriage of                 )  Appeal from

PAULA B. MINEAR,                        )  Circuit Court of

          Petitioner-Appellee,          )  Douglas County

          and                           )  No. 94D6

ROBERT E. MINEAR,                       )

          Respondent-Appellant.         )  Honorable

                                        )  Frank W. Lincoln,

                                        )  Judge Presiding.

_________________________________________________________________

          JUSTICE KNECHT delivered the opinion of the court:

          In February 1994, petitioner Paula Minear filed a peti-

tion for dissolution of her marriage to respondent Robert Minear. 

In October 1994, the trial court granted the dissolution and en-

tered the final judgment on remaining issues on August 28, 1996. 

Robert appeals, arguing the trial court abused its discretion by

(1) disregarding certain depreciation expenses when the court

calculated his net income, (2) failing to award him child sup-

port, (3) ordering him to pay Paula $500/month in maintenance,

(4) distributing the marital property "equally to the last pen-

ny," and (5) ordering him to pay part of Paula's attorney fees

and part of her prospective attorney fees on appeal.  We affirm.

          The parties were married in 1975.  When the dissolution

proceedings began, Paula was 40 years old and Robert was 41.  Two

children were born, Melissa in 1978 and Michael in 1981.  As

Melissa reached her majority on July 21, 1996, no custody order

was entered.  Robert was granted custody of Michael, which is not

disputed on appeal.

          Robert disputes the trial court's calculation of his

net income.  Specifically, he argues the trial court should have

reduced his net income by deducting certain depreciation expenses

related to the operation of his service station.  Using Robert's

financial statement for the first nine months of 1995, the court

added Robert's claimed depreciation expense of $10,873 (for the

same nine months) to his base income in calculating net monthly

income of $3,063.

          Robert argues this depreciation expense should have

been deducted from net income pursuant to section 505(a)(3) of

the Illinois Marriage and Dissolution of Marriage Act (Act) (750

ILCS 5/505(a)(3) (West 1994)).  Section 505(a)(3)(h) allows a

deduction from net income for "[e]xpenditures for repayment of

debts that represent reasonable and necessary expenses for the

production of income."  750 ILCS 5/505(a)(3)(h) (West 1994). 

Robert, relying on Posey v. Tate, 275 Ill. App. 3d 822, 656

N.E.2d 222 (1995), contends the trial court abused its discretion

in not permitting the depreciation deduction.

          In Posey, the trial court allowed the defendant to

deduct depreciation expense from investment rental property from

gross income to calculate child support.  The First District

Appellate Court, relying on section 505(a)(3)(h), found the trial

court did not abuse its discretion in doing so.  Posey, 275 Ill.

App. 3d at 827, 656 N.E.2d at 226.  The Posey court first looked

to Black's Law Dictionary, which defined "depreciation" as

follows:

          "'spreading out [of] the cost of a capital

          asset over its estimated useful life.  ***  A

          decline in value of property caused by wear

          or obsolescence and *** usually measured by a

          set formula which reflects these elements

          over a given period of useful life of proper-

          ty.  [Citation.]  [The] [c]onsistent, gradual

          process of estimating and allocating cost of

          capital investments over estimated useful

          life of asset in order to match cost against

          earnings.'"  Posey, 275 Ill. App. 3d at 826,

          656 N.E.2d at 225, quoting Black's Law Dic-

          tionary 441 (6th ed. 1990).  

The court then held:

               "[D]epreciation is not income, but a

          return of capital.  To subject depreciation

          expense, which has been allowed as a deduc-

          tion on a supporting parent's tax return, to

          child support would be to assess such support

          against capital instead of income.  ***  We

          therefore find that the deduction of straight

          line depreciation expense from net income by

          defendant, a taxpayer who is obligated to pay

          child support, is fair and proper, where he

          has shown such a deduction to be a 'reason-

          able and necessary expense for the production

          of income,' and that it is subject to a spec-

          ified repayment schedule, as contemplated by

          section 505(a)(3)(h)."  Posey, 275 Ill. App.

          3d at 826-27, 656 N.E.2d at 225-26.

          We find the reasoning of Posey questionable, since the

court found depreciation to be an "expenditure for repayment of

debt."  See 750 ILCS 5/505(a)(3)(h) (West 1994).  "Expenditure"

is defined as the "[s]pending or payment of money; the act of

expending, disbursing, or laying out of money; payment."  Black's

Law Dictionary 717 (6th ed. 1990).  "Payment" is defined as:  

               "The fulfil[l]ment of a promise, or the

          performance of an agreement.  ***  

               *** [T]he performance of a duty, prom-

          ise, or obligation, or discharge of a debt or

          liability, by the delivery of money or other

          value by a debtor to a creditor, where the

          money or other valuable thing is tendered and

          accepted as extinguishing debt or obligation

          in whole or in part."  Black's Law Dictionary

          1129 (6th ed. 1990).  

"Debt" is defined as "[a] sum of money due by certain and express

agreement.  A specified sum of money owing to one person from

another, including not only obligation of debtor to pay but right

of creditor to receive and enforce payment."  Black's Law Dictio-

nary 403 (6th ed. 1990).

          Thus, while in some circumstances depreciation may be a

"reasonable and necessary expense for the production of income"

(see 750 ILCS 5/505(a)(3)(h) (West 1994)), it is not an "expen-

diture for repayment of debt" as those terms are defined.  Fur-

ther, section 505(a)(3)(h) states:  "The court shall reduce net

income *** only for the period that such payments are due and

shall enter an order containing provisions for its self-executing

modification upon termination of such payment period."  750 ILCS

5/505(a)(3)(h) (West 1994).  Depreciation expenses cannot reason-

ably be construed as "payments" subject to "payment periods" as

required by the Act.  

          This court recently emphasized the significance of this

language.  In Gay v. Dunlap, 279 Ill. App. 3d 140, 664 N.E.2d 88

(1996), a case cited by neither party, the defendant deducted

from his income $10,500 for car and truck expenses, as well as

$1,075 for depreciation, legal and professional services, office

expense, supplies, meals, and entertainment.  In holding such

business expenses not deductible under section 505(a)(3)(h) in

determining the defendant's child support obligations, this court

first distinguished the determination of net income from the

trial court's consideration of the "'financial resources and

needs of the noncustodial parent'" (Gay, 279 Ill. App. 3d at 146,

664 N.E.2d at 93) in deciding whether to apply the statutory

guidelines:

               "A trial court decision about whether to

          apply the statutory guidelines involves care-

          fully balancing many factors--not limited to

          those listed in the statute.  (750 ILCS

          5/505(a)(2) (West 1992).)  The determination

          of net income, on the other hand, should be a

          straightforward, rigorous process.  The leg-

          islature defined 'net income,' for purposes

          of the statute, as 'the total of all income

          from all sources,' minus the specifically

          enumerated allowable deductions, which it

          then proceeded to list."  Gay, 279 Ill. App.

          3d at 146, 664 N.E.2d at 93.

This court emphasized the legislature's clearly expressed inten-

tion to permit deductions only where an expenditure is made for

the "repayment of debts":

          "Allowing day-to-day business expenses to be

          deducted under subsection (a)(3)(h) would

          ignore the language 'for repayment of debts.' 

          The legislature could have enacted the stat-

          ute without such language, but it chose to

          include it.  We will not read this language

          out of the statute when the statute makes

          perfect sense with it included. 

               Further, such a holding would also con-

          flict with the second sentence of subsection

          (a)(3)(h), which provides: 

               'The court shall reduce net income

               in determining the minimum amount

               of support to be ordered only for

               the period that such payments are

               due and shall enter an order con-

               taining provisions for its

               self-executing modification upon

               termination of such payment peri-

               od.'  (750 ILCS 5/505(a)(3)(h)

               (West 1992).)

          This language would make no sense if business

          expenses, ongoing and variable from month to

          month, could be deducted."  Gay, 279 Ill.

          App. 3d at 147, 664 N.E.2d at 93.

This court in Gay again distinguished the calculation of net

income from the determination of child support:

               "[W]e note the purpose of subsection

          (a)(3) (including subsection (h)) is simply

          to define the noncustodial parent's net in-

          come.  [Citation.]  Subsection (a)(3) is not

          intended to determine what the 'fair' amount

          of child support is, nor does it have any-

          thing to do with how much child support is to

          be paid.  All it does is define net income. 

          Expenses which it would be improper to deduct

          under subsection (a)(3) can still play a role

          in a trial court's decision regarding depar-

          ture from the statutory guidelines.  *** 

               We therefore hold only such expenses as

          constitute 'repayment of debts' may be de-

          ducted from net income under the first clause

          of section 505(a)(3)(h) of the Act, and fur-

          ther hold nonreimbursed business expenses do

          not fit into this category."  Gay, 279 Ill.

          App. 3d at 147-48, 664 N.E.2d at 94.

While Posey focused only on the requirement a deduction under

section 505(a)(3)(h) be a "reasonable and necessary expense for

the production of income" (see Posey, 275 Ill. App. 3d at 827,

656 N.E.2d at 226; see also Rimkus v. Rimkus, 199 Ill. App. 3d

903, 910, 557 N.E.2d 638, 643 (1990)), this court in Gay cau-

tioned two hurdles must be overcome to claim the deduction:

               "[S]imply because an expense falls into

          the category of a debt repayment does not

          mean it is deductible.  Qualifying as a re-

          payment of debt is a necessary, but not a

          sufficient, condition for deductibility under

          subsection (a)(3)(h).  Once this hurdle is

          overcome, the proponent of the deduction must

          also show the debts being repaid 'represent

          reasonable and necessary expenses for the

          production of income.'"  Gay, 279 Ill. App.

          3d at 148, 664 N.E.2d at 94, quoting 750 ILCS

          5/505(a)(3)(h) (West 1992).

Cf. In re Marriage of Heil, 233 Ill. App. 3d 888, 599 N.E.2d 168

(1992) (one-half of mortgage payment, taxes, and insurance on

hunting lodge utilized 50% of time for business deductible); In

re Marriage of Partney, 212 Ill. App. 3d 586, 571 N.E.2d 266

(1991) (real estate investment losses improperly deducted from

net income where it could not be shown to be reasonable or

necessary to the production of income and could not be presented

in a specified repayment schedule); In re Marriage of Cornale,

199 Ill. App. 3d 134, 556 N.E.2d 806 (1990) (monthly installment

payments on real estate investment not properly deductible where

there was no indication payments were reasonable and necessary

for the production of income and where evidence disclosed proper-

ty was not producing income at the time); In re Marriage of Hart,

194 Ill. App. 3d 839, 551 N.E.2d 737 (1990) (in dicta, trial

court did not err in finding debt incurred in purchasing a plane

as a business investment to be expenditure for repayment of

debts); In re Marriage of McBride, 166 Ill. App. 3d 504, 519

N.E.2d 1095 (1988) (nonreimbursed business expenses properly not

deducted from gross business income where trial court specifical-

ly found there was insufficient evidence expenses were necessary

to generate income and parties had defined "net income" in

settlement agreement without including nonreimbursed business

expenses as deductions in the calculation of child support); In

re Marriage of Lefler, 185 Ill. App. 3d 677, 685, 542 N.E.2d 1, 5

(1988) (business expenses disallowed as a deduction in calcula-

ting net income because provision allowing for a business debt

deduction contemplates a specified repayment schedule tracking

time "such payments are due" and asserted expenses were not

presented by way of such a specified repayment schedule); see

generally Annotation, Treatment of Depreciation Expenses Claimed

for Tax or Accounting Purposes in Determining Ability to Pay

Child or Spousal Support, 28 A.L.R.5th 46 (1995).

          Clearly, the trial court did not abuse its discretion

here by adding Robert's claimed depreciation expense back to his

income for purposes of determining child support and maintenance. 

First, the trial court did consider Robert's evidence of poten-

tial environmental liability at the service station, deducting

$84,630 from the value of the business allocated to him, a

reduction in his favor.  However, Robert failed to present any

evidence the claimed depreciation expenses were either "expendi-

tures for the repayment of debts" or "reasonable and necessary

expenses for the production of income," much less any specific

repayment schedule as required by the Act.  See 750 ILCS

5/505(a)(3)(h) (West 1994).  In fact, there was no testimony,

expert or otherwise, presented at trial as to the nature of these

expenses.  The expenses are mentioned only in one of Paula's

exhibits, an "income statement" for Robert's service station. 

This exhibit shows $10,873 in claimed depreciation expenses for

the first nine months of 1995, the figure used by the trial court

in calculating Robert's net income.  This minimal evidence is

insufficient to justify a deduction under section 505(a)(3)(h). 

Cf. In re Marriage of Holman, 122 Ill. App. 3d 1001, 462 N.E.2d

30 (1984) (depreciation expense of $9,351 added back to service

station owner's net business income in calculating maintenance

award); In re Marriage of Homann, 276 Ill. App. 3d 236, 241, 658

N.E.2d 492, 496 (1995) (questioning the actual income-expense

disparity of a spouse denied maintenance, where a $300/month

automobile depreciation "expense" was claimed); In re Marriage of

McDonald, 113 Ill. App. 3d 116, 118, 446 N.E.2d 559, 561 (1983)

(rejecting the claim of petitioner, whose "substantial income"

was reduced largely by depreciation expenses, he could not pay

maintenance, noting "[u]nless [depreciation] be funded, it

represents available funds").  

          Robert next contends the trial court abused its discre-

tion when it refused to award him child support.  He complains of

the court's failure to find, pursuant to section 505(a)(2) of the

Act, application of the statutory guidelines would be inappropri-

ate, and its failure to state the amount which would have been

required under the guidelines and reasons for the variance.  See

750 ILCS 5/505(a)(2) (West 1994).  Paula contends this court

should not consider the absence of express findings, since Robert

never called this failure to the attention of the trial court. 

In re Marriage of Harper, 191 Ill. App. 3d 245, 547 N.E.2d 574

(1989).  We agree with Paula.

          In Harper, the petitioner alleged, as does Robert here,

the trial court's failure to make express findings explaining the

reasons for its departure from the statutory guidelines for child

support required reversal.  Harper, 191 Ill. App. 3d at 246, 547

N.E.2d at 575; see 750 ILCS 5/505(a)(2) (West 1994).  As here,

the issue was raised for the first time on appeal.  This court

refused to address the merits:

          "Were we to do so, this case might be remand-

          ed with directions to the trial court to

          provide written findings in accordance with

          section 505(a).  The trial court might then

          make those findings, certify them back to

          this court, and we might then find them to be

          entirely appropriate.  It is even possible

          that plaintiff initially might have chosen

          not to pursue this appeal based upon the

          trial court's findings.  The point is that

          judicial resources were wasted by plaintiff's

          appeal of this issue.  This waste of resourc-

          es could have been avoided had plaintiff, at

          the time the trial court rendered its deci-

          sion or within 30 days thereafter, but asked

          for the written findings to which he claims

          to be entitled."  Harper, 191 Ill. App. 3d at

          246, 547 N.E.2d at 575.  

For the same reasons, Robert cannot now challenge the trial

court's alleged failure to make express findings in this case. 

See also In re Marriage of Mohr, 260 Ill. App. 3d 98, 631 N.E.2d

785 (1994); In re Marriage of Kern, 245 Ill. App. 3d 575, 615

N.E.2d 402 (1993) (waiver of trial court's failure to make

express findings, following Harper); In re Marriage of Baptist,

232 Ill. App. 3d 906, 598 N.E.2d 278 (1992) (waiver of trial

court's failure to make express findings, following Harper); but

see In re Marriage of Wright, 212 Ill. App. 3d 392, 571 N.E.2d

197 (1991) (refusing to follow Harper).

          Moreover, the trial court made adequate findings.  The

court found Paula's net monthly income to be $1,086 and Robert's

to be $3,063.  Based on this disparity, the court ordered Robert

to pay Paula $500/month maintenance, and then concluded:

          "[T]aking into consideration the amount of

          maintenance Respondent is hereby ordered to

          pay to the Petitioner, Respondent has a net

          income in excess of that of Petitioner and is

          not in need of child support from the Peti-

          tioner by reason thereof."

This was an express and sufficient finding satisfying the re-

quirements of section 505(a)(2).  See In re Marriage of Burris,

263 Ill. App. 3d 495, 499, 636 N.E.2d 71, 74 (1994) (trial

judge's oral comment on the disparity of income between the

parties prior to denying child support satisfied requirements of

section 505(a)(2)); Kern, 245 Ill. App. 3d at 577, 615 N.E.2d at

404 ("the requirement that the court make 'express findings'

(Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(2)) is not a require-

ment that the findings be written or incorporated into the

court's order").

          Robert next challenges the maintenance award.  As

noted, the trial court ordered Robert to pay Paula $500/month in

periodic, indefinite maintenance "until further order of the

court."  The court based its award on Robert's superior earning

capacity, Paula's inability to maintain herself "anywhere near

the standard of living enjoyed by the parties during the course

of their marriage," the length of the marriage, and the unlike-

lihood of Paula being able to substantially increase her earning

capacity.  The evidence here indicated Paula worked full-time as

a medical receptionist at Carle Clinic.  She took home approx-

imately $1,086/month, and her monthly expenses were $1,920.

          Robert challenges the amount and duration of the award. 

Robert suggests the trial court "did not discuss, or apparently

even consider" the court's award to Paula of $98,452, exactly

one-half the value of the marital property.  However, it is well

settled a spouse should not be required to sell or otherwise

impair capital assets in lieu of maintenance, especially where

the other spouse has sufficient income to meet both his needs and

the needs of his spouse.  Homann, 276 Ill. App. 3d at 241, 658

N.E.2d at 495; In re Marriage of Cheger, 213 Ill. App. 3d 371,

379-80, 571 N.E.2d 1135, 1141 (1991).  Moreover, Robert was

awarded the service station, the major income-producing asset of

the marriage.

          Robert also alleges the trial court failed to consider

"Paula's household had diminished from a family of four to a

single person."  However, maintenance is granted to a spouse to

enable that person to maintain the lifestyle enjoyed prior to

dissolution, or an approximation thereof.  The absence of chil-

dren and Robert after dissolution is irrelevant to that determi-

nation.

          Robert argues the trial court considered neither his

ability to pay nor the standard of living during the marriage. 

Yet, the court's order of dissolution states it took into consid-

eration the parties' disparate incomes and Paula's inability to

maintain a lifestyle "anywhere near" the standard established

during her marriage.  We emphasize while "[o]ne notable goal of

the Act is to make separating spouses financially independent[,]

unfortunately, often this is not possible due to the limited re-

sources of both parties."  In re Marriage of Koberlein, 281 Ill.

App. 3d 880, 885, 667 N.E.2d 695, 699 (1996); see also In re Mar-

riage of Gunn, 233 Ill. App. 3d 165, 174-75, 598 N.E.2d 1013,

1020 (1992); In re Marriage of Simmons, 87 Ill. App. 3d 651, 661,

409 N.E.2d 321, 328 (1980).  As to Robert's claim the trial court

failed to consider Melissa's upcoming college expenses, no

evidence was adduced at trial as to the nature and extent, if

any, of such expenses, so the trial court's order is appropri-

ately silent with respect to these speculative "expenses."  The

trial court did not abuse its discretion in awarding Paula

$500/month in maintenance.  See In re Marriage of Dunseth, 260

Ill. App. 3d 816, 833, 633 N.E.2d 82, 95 (1994) (award of mainte-

nance may not be disturbed absent an abuse of discretion).

          Robert challenges the duration of the maintenance 

award, claiming it was error to award "permanent" maintenance

with no provision for review.  An award of maintenance is not

permanent and may be modified upon a showing of a substantial

change in circumstances.  750 ILCS 5/510(a) (West 1994); In re

Marriage of Werries, 247 Ill. App. 3d 639, 651, 616 N.E.2d 1379,

1389 (1993); Gunn, 233 Ill. App. 3d at 173, 598 N.E.2d at 1018. 

Where a spouse is employable at an income not overly dispropor-

tionate relative to the standard of living established during the

marriage, limited maintenance is appropriate.  Werries, 247 Ill.

App. 3d at 652, 616 N.E.2d at 1390; see Dunseth, 260 Ill. App. 3d

at 833, 633 N.E.2d at 95.  On the other hand, where a spouse is

not employable or is employable only at a low income compared to

the previous standard of living, indefinite maintenance would be

appropriate.  Werries, 247 Ill. App. 3d at 652, 616 N.E.2d at

1390.

          The trial court concluded it was unlikely Paula would

be able to increase her income to a level approaching Robert's. 

These facts distinguish this case from those cited by Robert, In

re Marriage of Heller, 153 Ill. App. 3d 224, 505 N.E.2d 1294

(1987), and In re Marriage of Girrulat, 219 Ill. App. 3d 164, 578

N.E.2d 1380 (1991).  In Heller, the former wife was well-educated

with "speculative" earning capacity due to a variety of employ-

ment skills she possessed, including culinary cooking skills and

training as a travel agent.  In Girrulat, the former wife was

working 30 hours per week at $4 per hour, but there was evidence

she would be obtaining a high school equivalency certificate

which would enable her to earn considerably more in the near

future.  In both cases, it was found to be error to award mainte-

nance without a provision for review.  Heller, 153 Ill. App. 3d

at 236, 505 N.E.2d at 1301; Girrulat, 219 Ill. App. 3d at 169,

578 N.E.2d at 1383.  Given the obvious distinctions between these

cases and the instant case, we cannot say the trial court abused

its discretion in awarding Paula indefinite maintenance.

          Robert next contends the trial court abused its discre-

tion when it distributed the marital property "exactly equally to

the last penny."  The trial court awarded Paula the marital

residence ($49,000), certain cash and investment accounts

($24,813), household furniture ($10,025), a note receivable

($4,000), the couples' 1990 Grand Am automobile (value undeter-

mined), and an equalizing payment from Robert ($10,615), for a

total marital property award of $98,453.  The court awarded

Robert the net value of the service station ($80,370, after

deducting $84,630 in potential environmental liability), certain

cash and investment accounts ($17,732), and various other proper-

ty ($10,965), for a total marital property award of $98,453

(after considering the equalizing payment made to Paula).  

          Robert argues he, as the custodial parent, should have

been awarded the marital residence.  It is true an award of the

marital home in favor of the custodial parent is normally pre-

ferred.  See 750 ILCS 5/503(d)(5) (West 1994) (in dividing

marital property, trial court must consider "the relevant econom-

ic circumstances of each spouse when the division of property is

to become effective, including the desirability of awarding the

family home, or the right to live therein for reasonable periods,

to the spouse having custody of the children"); In re Marriage of

Zirngibl, 237 Ill. App. 3d 1049, 1057, 606 N.E.2d 1, 6 (1991); In

re Marriage of Brenner, 95 Ill. App. 3d 100, 102, 419 N.E.2d 400, 

402 (1981).  Yet this factor is but one of many a trial court

must consider in apportioning marital property.  See 750 ILCS

5/503(d) (West 1994).  Here, it was entirely reasonable for the

trial court to award Robert the service station, the major

income-producing asset of the marriage, so he could continue to

run it.  Robert does not suggest how the trial court could have

divided the remaining marital property fairly without awarding

Paula the marital residence.

          Robert refers to the trial court's equalizing payment

as "bizarre."  We see nothing "bizarre" about the trial court's

attempt to apportion the marital property of the parties evenly

through the use of an equalizing payment.  See In re Marriage of

Swanson, 275 Ill. App. 3d 519, 528, 656 N.E.2d 215, 222 (1995)

("[w]hen awarding income-producing assets to one spouse becomes

necessary, the trial court may achieve an equitable distribution

by authorizing off-setting payments to the other spouse or by

awarding a greater share of total marital assets to the spouse

who does not receive the income-producing assets"); In re Mar-

riage of Jarvis, 245 Ill. App. 3d 1007, 1013, 614 N.E.2d 1294,

1298 (1993) (where ex-husband was awarded income-producing assets

of the marriage, award to ex-wife of double the value of marital

property received by him obviated need for equalizing payments);

In re Marriage of Morrical, 216 Ill. App. 3d 643, 645-46, 576

N.E.2d 465, 467 (1991); In re Marriage of Hellwig, 100 Ill. App.

3d 452, 459, 426 N.E.2d 1087, 1092 (1981).  Equal distribution of

marital property is generally favored, unless application of the

statutory factors demonstrates an equal division would be inequi-

table.  In re Marriage of Moll, 232 Ill. App. 3d 746, 755, 597

N.E.2d 1230, 1236 (1992).  Here, while Robert has custody of Mi-

chael, he was awarded the major income-producing asset of the

marriage.  Under these circumstances, we cannot say the trial

court abused its discretion in splitting the marital property

50/50.  Cf. Moll, 232 Ill. App. 3d 746, 597 N.E.2d 1230 (no abuse

of discretion by trial court in awarding ex-husband 50% of

marital property, where he was granted custody and ex-wife

awarded family farm); Heller, 153 Ill. App. 3d 224, 505 N.E.2d

1294 (affirming 50/50 split of marital property based on dispari-

ty of incomes, despite ex-husband's protestations maintenance and

child's tuition expenses consumed 50% of his income); In re

Marriage of Brooks, 138 Ill. App. 3d 252, 486 N.E.2d 267 (1985)

(affirming 50/50 split of marital property).  

          Robert's final two arguments are related.  He claims

the trial court abused its discretion by ordering him to pay part

of Paula's attorney fees incurred in the dissolution and part of

her prospective fees on appeal.  The trial court calculated

Robert's income to be 73.82% of the parties' total income and

ordered him to pay 73.82% of Paula's attorney fees.  Paula had

claimed $3,700 in legal fees arising from the dissolution and was

awarded $2,781.  Paula estimated her legal fees on appeal would

be $3,000 and asked for an award of $2,000.  The trial court,

noting Paula requested less than 73.82% of her prospective

attorney fees ($2,215), granted her request.

          Robert argues there was no showing of either Paula's

inability to pay her attorney fees or his ability to pay.  As a

general matter, attorney fees are the primary responsibility of

the person for whom the services are rendered.  Werries, 247 Ill.

App. 3d at 655, 616 N.E.2d at 1392.  Pursuant to section 508 of

the Act, however, the trial court may, in its discretion and

after consideration of the financial resources of the parties,

order one spouse to pay all or part of the other's attorney fees

arising out of dissolution proceedings.  See 750 ILCS 5/508(a)

(West 1994); In re Marriage of Kennedy, 214 Ill. App. 3d 849,

861, 573 N.E.2d 1357, 1365 (1991).  Section 508(a)(3) also ex-

pressly authorizes a prospective award of attorney fees to a

party for the defense of an appeal.  750 ILCS 5/508(a)(3) (West

1994); In re Marriage of Talty, 166 Ill. 2d 232, 240, 652 N.E.2d

330, 334 (1995); In re Marriage of Brent, 263 Ill. App. 3d 916,

928, 635 N.E.2d 1382, 1390 (1994); cf. Pub. Act 89-712, eff. June

1, 1997 (amending 750 ILCS 5/508(a) (West 1994)) (permitting

awards of interim attorney fees or contributions to attorney fees

and costs as well).  Either award of attorney fees requires the

party seeking fees to demonstrate an inability to pay and the

ability of the other spouse to meet the obligations of both.  In

re Marriage of Phillips, 244 Ill. App. 3d 577, 595, 615 N.E.2d

1165, 1178-79 (1993); see Talty, 166 Ill. 2d at 242, 652 N.E.2d

at 335; cf. Pub. Act 89-712, eff. June 1, 1997 (adding 750 ILCS

5/501(c-1)(3) (West 1994)) (permitting award of interim attorney

fees from time to time while a case is pending, based upon the

same criteria).  Yet financial inability to pay does not demand a

showing of destitution, and the fee-seeking spouse is not re-

quired to divest himself of capital assets before requesting

fees.  Kennedy, 214 Ill. App. 3d at 861-62, 573 N.E.2d at 1365. 

It is sufficient to show payment would exhaust his estate or

strip him of his means of support or undermine his economic sta-

bility. Phillips, 244 Ill. App. 3d at 595-96, 615 N.E.2d at 1179. 

          The trial court based its award of attorney fees on the

disparate income of the parties, an approach Robert repeatedly

refers to as "cavalier."  However, even with the $500/month

maintenance award, Robert's net monthly income was almost $1,000

more than Paula's.  Robert again complains all of Melissa's

upcoming college expenses were "dumped on" him, but the trial

court's order did not address this subject.  Robert complains of

the trial court's use of the parties' relative incomes in deter-

mining the proportion of Paula's attorney fees he should pay. 

However, whether one spouse's attorney fees should be paid by the

other spouse and what proportion of these fees is to be paid are

decisions which lie within the sound discretion of the trial

court.  In re Marriage of Blazis, 261 Ill. App. 3d 855, 870, 634

N.E.2d 1295, 1305 (1994); Phillips, 244 Ill. App. 3d at 596, 615

N.E.2d at 1179; cf. Pub. Act 89-712, eff. June 1, 1997 (adding

750 ILCS 5/503(j)(5) (West 1994)) (where one party petitions for

contribution for fees and costs from the other party, contribu-

tion award "may be in the form of either a set dollar amount or a

percentage of fees and costs (or a portion of fees and costs)"). 

We find no abuse of this discretion here.

          For the reasons stated, we affirm the judgment of the

trial court.

          Affirmed.

          GARMAN, J., concurs.

          COOK, J., dissents.

          JUSTICE COOK, dissenting:

          I respectfully dissent.

          Why should we even be concerned with whether deprecia-

tion expense should have been deducted from Robert's net income

under section 505(a)(3) of the Act?  Section 505(a)(3) deals with

child support, and Robert has not been ordered to pay child

support.  Robert was ordered to pay maintenance and attorney

fees.  I question whether section 505(a)(3)'s definition of net

income has any bearing on maintenance or attorney fees.  I

address the issue, however, because it is addressed in the

majority opinion.  

          For the reasons set out in my separate opinion in Gay

(279 Ill. App. 3d at 150-52, 664 N.E.2d at 95-96), I disagree

with the majority's conclusion that section 505(a)(3) provides a

comprehensive listing of the deductions that may be taken in

determining income or net income.  The section may work satis-

factorily for employees who receive a paycheck, but it cannot be

rigidly applied to determine the income of self-employed individ-

uals.  As I understand the majority opinion, a self-employed

individual may deduct expenses such as cost of goods sold, rent,

utilities, and secretarial help only if he jumps through the

hoops of section 505(a)(3)(h) and shows that those expenses are

in the form of debts which are being repaid and will be paid off

at some definite time.  A self-employed individual who pays these

expenses as they come due is not liable for the "repayment of

debt" and is accordingly not entitled to a deduction under the

majority's view.  Even if the expenses are paid sometime after

they become due, and there is accordingly a "debt" for some

period of time, there cannot be a deduction for continuing

expenses because such expenses never terminate.  

          That result cannot be correct and is not the way income

is calculated in practice.  Even in Gay, the self-employed

realtor was allowed to deduct expenses such as rent, utilities,

and secretarial help because those items were subtracted from the

check given him by Coldwell Banker, and we did not look past that

check to his total commissions, despite section 505(a)(3)'s

admonition that we begin with "the total of all income from all

sources," and subtract only the listed deductions.  750 ILCS

5/505(a)(3) (West 1994).  Perhaps some sense can be made of

section 505(a)(3) by the explanation that the section addresses

only net income, and that additional deductions are allowed in

determining gross income.  As a matter of accounting, cost of

goods sold is deducted in determining gross income.  Section

505(a)(3) is not a comprehensive statement of what constitutes

income, but is a statement of legislative intent to limit the

deductions that may be made in calculating net income for purpos-

es of calculating child support. 

          I agree, however, that a circuit court is not required

to deduct depreciation in determining net income for purposes of

the child support guidelines.  While tax law principles may be

useful in determining what net income is available for child

support, they are not controlling.  Ivanyi v. Granoff, 171 Ill.

App. 3d 411, 421-22, 526 N.E.2d 189, 197 (1988) (refusing to

consider items which defendant was required to report on his tax

return but did not in fact receive).  What is important is not

what is shown on the tax return, but the individual's current

ability to pay child support.  

          I disagree with the majority's decision that Robert is

not entitled to child support from Paula because Robert has more

income than Paula does.  A child is entitled to the support of

both of his parents.  In re Marriage of Duerr, 250 Ill. App. 3d

232, 238, 621 N.E.2d 120, 125 (1993); In re Marriage of Maczko,

263 Ill. App. 3d 991, 994, 636 N.E.2d 559, 562 (1992); see also

750 ILCS 5/505(a) (West 1994) ("the court may order either or

both parents owing a duty of support to a child of the marriage

to pay an amount reasonable and necessary for his support").  The

argument that a payor of child support should receive some sort

of reduction when the custodian has income has repeatedly been

rejected.  See Kern, 245 Ill. App. 3d at 579, 615 N.E.2d at 405;

In re Marriage of Blaisdell, 142 Ill. App. 3d 1034, 1047, 492

N.E.2d 622, 630 (1986).  Assuming that Robert's net income is

$3,063, and that Paula's is $1,086, and that the child receives

support at the guidelines amount from both, the child would

receive $829.80 of support per month.  I do not see that as

excessive.  

          The circuit court attempted to divide the property

equally between the parties.  In doing so the circuit court

awarded Paula the residence, the furniture, the automobile, the

accounts, and an equalizing payment ($10,615), all of which to-

talled $98,453.  Robert was also awarded $98,453, but $80,630 of

his award came from the service station he operated.  Robert was

then given custody of the minor child, but no child support.  

          There is a double counting problem here.  Paula can

sell all the property she was awarded and still have a monthly

income of $1,086.  Robert's monthly income of $3,063 is dependent

on his continued ownership of the service station.  Robert cannot

sell the service station and buy a residence, for example.  Some

portion of Robert's $3,063 is not income from employment, but a

return on capital.  When the circuit court considered the full

amount of the $3,063 in awarding maintenance, but awarded the

service station to Robert as the major portion of Robert's

property division, it erroneously counted the same asset twice. 

See In re Marriage of Zells, 143 Ill. 2d 251, 256, 572 N.E.2d

944, 946, (1991); Talty, 166 Ill. 2d at 236-40, 652 N.E.2d at

332-34.  The court compounded the error when it required Robert

to pay a portion of Paula's attorney fees corresponding to his

share of the parties' total income (73.82%).  (Why was Paula not

required to pay 26.18% of Robert's attorney fees?)  This was not

just a case of double counting, but of triple counting.  I ques-

tion whether Robert would have much greater income potential than

Paula if he no longer had the service station.

          The majority justifies the award of attorney fees by

citing Kennedy for the proposition that Paula is not required to

divest herself of capital assets before seeking fees.  That rule

does not apply, however, if Robert would likewise be required to

divest himself of capital assets in order to pay attorney fees. 

Kennedy, 214 Ill. App. 3d at 861, 573 N.E.2d at 1365 (spouse

seeking fees must establish financial ability of other spouse to

pay them).  There is not a lot of money in this case.  It seems

clear that both parties will be required to invade their capital

assets, and there is no justification for shifting Paula's fees

to Robert.          

          I would reverse the circuit court's order as it relates

to child support, maintenance, property division, and attorney

fees, and remand for reconsideration and the entry of an order in

accord with the views expressed herein.