*In re* MARRIAGE OF PHYLLIS D. GIRRULAT, Petitioner-Appellee, and JOSEPH L. GIRRULAT, Respondent-Appellant.

Fifth District   No. 5—90—0389

Opinion filed September 19, 1991.

Fuller, Hopp, McCarthy & Quigg, of Decatur (Glenn O. Fuller, of counsel), for appellant.

William E. Farr, of Pana, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Phyllis and Joseph Girrulat were married February 2, 1961. Phyllis filed a petition for dissolution of marriage on December 19, 1988. Joseph Girrulat raises two issues in his appeal: (1) whether the award of permanent maintenance to Phyllis with no provision for review was an abuse of discretion; and (2) whether the court erred in ordering him to pay a portion of Phyllis' attorney fees. We reverse.

At the time of trial Phyllis was 46 years of age. She has an eighth-grade level of education. After the parties separated, Phyllis took measures to obtain a high school equivalency certificate. She testified that she was unable to obtain the certificate, however, because her ability to concentrate was reduced after the divorce proceedings began. During the parties' marriage, Phyllis rarely worked outside the home. On occasion she took cleaning jobs, helped Joseph remodel and build houses, and worked on a packaging line for a period of two years in the late 1970's. Phyllis was principally a housewife as her husband did not want her to work outside the home. At the time of the dissolution hearing, Phyllis was working 30 hours a week at $4 per hour for Lutheran Home Health Care. Her financial affidavit stated her total monthly living expenses were $959.

Although medical experts were not called to testify on Phyllis' behalf, she testified that she had developed problems with her nerves, for which she was taking medication prescribed by a doctor. Phyllis testified that the medication was not working well. Three

years prior to the hearing, Phyllis had surgery on her main heart artery to correct a blockage problem. The surgery was successful, and she needs to see her doctor only if she has a problem. Her doctor advised her to watch her weight and her diet because of high cholesterol levels.

Miles Feller, manager of Watson Foods Company, testified that in the late 1970's he was manager of a business where Phyllis worked for two years. Feller attempted to contact Phyllis two weeks prior to the hearing to offer her a job. He testified that although he left two messages on Phyllis' answering machine advising her that he had a job for her, he did not receive a return call from her. Phyllis testified that she attempted to return his call, but was unable to reach him. She stated that she was unaware of Feller's reason for attempting to reach her. Feller stated that he was going to offer her a job at $4 per hour for 40 hours per week and that she would have received an increase to $4.25 per hour after 30 days. In addition, annual increases were paid and those averaged 8% for employees in Phyllis' pay area. The job would have been offered to Phyllis despite her medical problems. The job was no longer available at the time of the hearing, however, because Feller was unable to contact Phyllis, and the position had been filled.

Joseph was 48 years of age at the time of trial. He is employed at Firestone Tire and Rubber Company, where he has worked for 25 years as a truck tire builder. In 1988, his gross income was $41,791.40. He testified that beginning in 1989, however, the policy regarding overtime changed, which resulted in a decrease in his gross annual wage. Joseph's average gross weekly pay for 40 hours is $700. After deductions are taken for State and Federal taxes, union dues, life and medical insurance, a voluntary retirement contribution, and a United Way contribution, Joseph's net take-home pay averages $480 per week. According to Joseph's financial affidavit, his total monthly living expenses are $932.

The court entered a memorandum of decision. Both parties had items of nonmarital property, but not all of the items were assigned a value. Of the items which were assigned a value, the trial court awarded $2,550 to Phyllis, and $690 to Joseph. The court's order further provided:

"2. Award of marital estate to former wife.

| | |
|---|---|
| a. marital house | $43,500.00 |
| b. household items in the marital house with the exception of that awarded to former husband | 350.00 |

| | |
|---|---|
| c. 1 silver bar | no evidence |
| d. ring purchased 12-15-88 | 965.14 |
| e. her IRA | 300.00 |
| f. ½ of former husband's workman's compensation claim, if any | no evidence |
| g. ½ of former husband's asbestos claim, if any | no evidence |

h. a portion of the Firestone pension to be paid to former wife as the pension is disbursed, and to be allocated at a rate determined as follows: the amount of each disbursement times ½ times a fraction whose numerator is the months of the marriage (336) and whose denominator is the total months of former husband's employment with Firestone, with the court retaining jurisdiction to enforce the decree

| | |
|---|---|
| Total marital estate to former wife | $45,115.14 |

3. Award of marital estate to former husband.

| | |
|---|---|
| a. 1983 Cadillac | $2000.00 |
| b. 1977 Plymouth truck | 1000.00 |
| c. 1969 Massey Ferguson tractor | 3000.00 |
| d. 1983 bass boat | 3000.00 |
| e. utility trailer | 100.00 |
| f. tools | 1599.00 |
| g. guns: 12 gauge goose gun, 16 gauge single barrel, 357 magnum Ruger Black Hawk, see I(A)(2)(a) for problem in valuing guns | 150.00 |
| h. 1 silver bar | no evidence |
| i. all bonds | 3400.00 |
| j. ½ of his workman's compensation claim, if any | no evidence |
| k. ½ of his asbestos claim, if any | no evidence |
| l. that portion of his Firestone pension not allocated to former wife | |
| m. pool located at the marital home | 3000.00 |
| n. Vine Street real estate | 3250.00 |
| o. John Street real estate | 18,000.00 |
| p. 10 acre tract | 5000.00 |

| q. 20 acre tract | 12,000.00 |
|---|---|
| Total marital estate to former husband | $55,499.00 |

4. Dissipation charge against husband's marital estate: Former wife was found to have dissipated $1906.58, and former husband was found to have dissipated $3375.26. Net dissipation is $1468.68 by former husband. Former wife is awarded $1468.68 of the bonds that are listed above in former husband's award, leaving former husband $1931.32 of the bonds.

\* \* \*

IV. Maintenance

    A. Considerations.

        1. Former husband is able to meet his financial needs independently. As stated previously, he is healthy, has prospective income from employment of at least $35,000 per year (without overtime), and appears economically astute.

        2. Former wife is unable to support herself through appropriate employment. She currently works 6 hours per day at $4 per hour, and she has little prospect of increased income in the near or distant future. \*\*\* \*\*\*

        4. Without maintenance, not only will former wife not be living at or near the standard of living established during the marriage, she will not be able to meet her basic monthly expenses.

    B. Indefinite award of maintenance to former wife is appropriate and is set at $150 per week."

The court further ordered Joseph to pay $2,500 of Phyllis' attorney fees, and Phyllis was ordered to pay the balance of $557.50. Joseph filed a motion to reconsider, and the court, in a supplemental judgment order, amended its ruling and ordered Joseph to pay $1,907.50 of Phyllis' attorney fees, leaving Phyllis responsible for the $1,150 balance. Post-trial motions were filed by both parties, and the court denied the motions. Joseph filed a notice of appeal on June 18, 1990.

Joseph first argues that the trial court abused its discretion in awarding Phyllis $150-per-week maintenance indefinitely. Joseph does not contest that Phyllis is presently entitled to $150-per-week maintenance; however, he argues that the award of permanent maintenance without provision for review was an abuse of discretion because no showing was made that Phyllis could not rehabilitate herself economically.

Generally, the awarding of maintenance will not be disturbed on appeal absent a showing of an abuse of discretion. (*In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 233, 505 N.E.2d 1294, 1300.) Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 504(a)) provides that a court may grant maintenance only if it finds that the spouse seeking maintenance: lacks sufficient property, including marital property, to provide for her reasonable needs; is unable to support herself through appropriate employment; or is otherwise without sufficient income. In determining the amount and duration of an award of maintenance, the trial court should consider all relevant evidence and should specifically examine the parties' financial resources; education; current standard of living; duration of the marriage; and age and physical condition of the parties. Ill. Rev. Stat. 1989, ch. 40, par. 504(b).

■ As indicated earlier Joseph does not contest that Phyllis is entitled to an award of maintenance. Moreover, it is clear that Phyllis does not have sufficient income with which to provide for her reasonable needs or to maintain the standard of living established during the marriage. Joseph does have income sufficient to meet his own expenses while providing maintenance to Phyllis. We agree with Joseph, however, that the trial court abused its discretion in awarding Phyllis permanent maintenance without provision for review.

The spouse who is awarded maintenance is under an affirmative obligation to seek appropriate employment. (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 328, 453 N.E.2d 748, 754.) One objective of the Illinois Marriage and Dissolution of Marriage Act is to enable a formerly dependent spouse to become financially independent in the future. (*Marriage of Heller*, 153 Ill. App. 3d at 235, 505 N.E.2d at 510; *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 352, 461 N.E.2d 447, 456.) In this case there is evidence that Phyllis will obtain a high school equivalency certificate, and will be able to find full-time employment which pays more than she is currently receiving.

Phyllis argues that her future employment may be hindered because of her health. We note that respondent objected to Phyllis' testimony on this point but did not raise the objection in his post-trial motion. Objections not raised in a post-trial motion are generally deemed waived. Regardless of any waiver, however, the testimony by Phyllis related only to her present condition. There was no medical or lay testimony that would establish that the conditions of which she complained were permanent. Therefore, while the court may have considered the testimony in awarding current maintenance, it could not support an award of indefinite maintenance. In short, the evidence

does not support a finding that Phyllis' health will prevent her from seeking gainful employment in the future.

We recognize that section 510(a) of the Illinois Marriage and Dissolution of Marriage Act provides for modification of a judgment respecting maintenance upon a showing of substantial change in circumstances. Under the court's present order, there is no incentive for Phyllis to seek either additional training or further employment. The court, by not making its award subject to review, requires Joseph to proceed under section 510(a) of the Illinois Marriage and Dissolution of Marriage Act if he wishes to obtain a modification in the future. Under section 510(a), no change would be made unless there is a showing of substantial change in circumstances. In view of the evidence adduced, we believe the trial court abused its discretion by not making provision for review of the maintenance award after a given period of time.

Joseph next argues that the trial court erred in ordering him to pay a portion of Phyllis' attorney fees.

Of the $3,057.50 balance due attorney Fombelle, Phyllis was ordered to pay $1,150, and Joseph was ordered to pay the remaining $1,907.50. Joseph contends that he does not have sufficient income to pay the fees, and that the trial court's memorandum of decision clearly reflects this fact. That portion of the court's memorandum to which Joseph refers states:

> "Court notes that former husband complained at trial that his monthly burden of debt and maintenance payments was too heavy, and he asked for relief. From the evidence, it appears that as a result of the temporary orders of the Court, former husband has a current monthly obligation for debt and maintenance of approximately $1566.87. If he chooses, he may now sell the bass boat, tractor, Cadillac, 20 acres, 10 acres, bonds and the pool and have remaining debt of only approximately $3103.64 (plus costs of sale). With his income, the remaining debt can quickly be retired. His monthly obligation is then only $650 per month rather than $1566.87."

■■ "An award of attorney fees in a dissolution proceeding rests in the sound discretion of the trial court, and a court of review will reverse only for an abuse of discretion. The party seeking the attorney fees must show a financial inability to pay and must show the financial ability of the opposing spouse to pay." (*In re Marriage of Osborn* (1990), 206 Ill. App. 3d 588, 602, 564 N.E.2d 1325, 1333.) Joseph submits that the affidavits of the parties show that neither he nor Phyllis has the income needed to pay her attorney fees. There is a

great disparity in the incomes of the parties, and Phyllis earns significantly less than Joseph. While Joseph's current monthly debt and maintenance obligation is estimated at $1,566.87, it is clear from the trial court's memorandum that Joseph has the ability to quickly reduce his debt, a fact which Joseph does not deny. Considering Joseph's income in relation to his wife's income, and his ability to reduce his debt, we do not find that the trial court abused its discretion in ordering Joseph to pay a portion of his wife's attorney fees.

Joseph next argues that the award of attorney fees should be remanded to the trial court because no evidence was presented as to what the usual and customary fees for like services are in Christian County. The factors to consider in determining the amount of attorney fees are: the skill and standing of the attorney, the nature of the case, the novelty and difficulty of the questions in issue, the amount and importance of the subject matter, the degree of responsibility, the usual and customary charges, and the benefits resulting to the client. *Marriage of Osborn*, 206 Ill. App. 3d at 602, 564 N.E.2d at 1333.

■■ With regard to the evidence as to the usual and customary charges for like services, attorney Fombelle testified on direct examination as follows:

"I am an attorney licensed to practice in the State of Illinois, currently practicing in a multi county area in Central Illinois. ***

\* \* \*

\*\*\* I am familiar with the usual and customary rate charged in the Central Illinois area, and they range somewhere around Seventy-five Dollars an hour to my top figure of Two Hundred and Fifty Dollars an hour in Court."

Attorney for the respondent cross-examined Fombelle, asking at one point, "[Y]ou are stating that Two Hundred and Fifty Dollars per hour would be reasonable here in Christian County?" In response Fombelle testified:

"I am saying that Two Hundred and Fifty Dollars per hour is what I charge for trial work, and I do trial work all over Central Illinois. I do not find Christian County to be a backward community. *** I do not feel that Christian County differs from any of the surrounding Illinois counties like Macon and Sangamon ***.

\* \* \*

I believe that Two Hundred and Fifty Dollars an hour is reasonable for me, yes. I do not say that it is reasonable for every lawyer."

Although attorney Fombelle testified that $250 was a reasonable fee for his services, he did not establish the amount of the usual and customary fee for like services in Christian County. The attorney fees allowed should be fair to both the party required to pay and to the attorney requesting them. (*Marriage of Heller*, 153 Ill. App. 3d at 237, 505 N.E.2d at 1302.) Because no evidence was presented as to what the usual and customary fees are for like services in Christian County (see *In re Marriage of Morse* (1986), 143 Ill. App. 3d 849, 493 N.E.2d 1088), we conclude that the amount of the attorney fees awarded constituted an abuse of discretion, and we remand this cause for a reconsideration of the customary fees in Christian County and of the proper award of attorney fees in this case.

The decision of the circuit court of Christian County is affirmed in part and reversed in part and remanded.

Affirmed in part; reversed in part and remanded.

HOWERTON and GOLDENHERSH, JJ., concur.