*In re* MARRIAGE OF EDWARD R. MAYHALL, Petitioner-Appellant, and TAMMY L. MAYHALL, Respondent-Appellee.

Fourth District    No. 4—99—0532

Argued December 14, 1999.—Opinion filed February 9, 2000.

MYERSCOUGH, J., dissenting.

Melissa M. McGrath (argued), of Thomson & Weintraub, of Bloomington, for appellant.

David H. McCarthy (argued), of Peoria, for appellee.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Petitioner, Edward R. Mayhall, and respondent, Tammy L. Mayhall, were married in June 1985. At that time Edward was about 21 years old, and Tammy was about 19 years old. The parties had two children, Alex, born in 1988, and Kaitelyn, born in 1989. Edward petitioned for dissolution of marriage on June 30, 1998, and on May 4, 1999, the circuit court entered its final order granting the petition.

Pursuant to the agreement of the parties (which was based on a custody evaluation), the circuit court awarded custody of Alex to Edward and custody of Kaitelyn to Tammy. Tammy was eventually ordered to pay $18-per-week child support for Alex ($78 per month). Edward was ordered to pay $286 biweekly as child support for Kaitelyn ($619.67 per month). Edward was also ordered to maintain his existing medical insurance on the children and to pay 75% of the medical bills not covered by insurance, with Tammy to pay the other 25%.

Edward, 34 years old at the time of the judgment, is employed at Mitsubishi Motor Manufacturing of America. The court found that Edward's net income was $1,431 every two weeks. During the years 1994 through 1997, Edward's gross income averaged $49,116 per year.

Tammy, 32 years old at the time of the judgment, has a high school education but no further training or education. During the marriage, she babysat three children at $1.50 per hour. During the last five years, Tammy worked off and on at Getz Greenhouse (owned by her

father), most recently earning $6 per hour. Tammy has income of about $490 per month. Since the spring of 1998, Tammy has looked for employment at nursing homes and day-care centers, which pay $5.15 per hour. She hopes to find employment as a teacher's aide, which pays $6.75 per hour.

Pursuant to the agreement of the parties, the trial court ordered the sale of the marital residence, now listed for sale at $86,000. There is a mortgage balance of $39,000. Tammy is allowed to live in the residence until it is sold and is required to make the mortgage payments, being reimbursed from the sale proceeds for her principal payments. Two loans, in the amounts of $5,373 and $5,205, are also to be paid from the proceeds, and the balance divided between the parties. Edward is to pay Tammy's attorney fees ($2,384.50). Edward was awarded his truck, valued at $8,475, and one-half the net value of his 401(k) plan, $17,648. He was ordered to pay the debt on the truck, $13,000, and a debt to his parents, $4,816. Tammy was awarded her car, valued at $9,925, one-half of Edward's 401(k) plan, $17,648, and some funds given her by her church, $4,800. She was ordered to pay the debt on her car of $9,500, a debt to her parents of $2,500, and the custody evaluation bill of $1,100. Totaling these figures, and assuming the residence is sold for the listed price, Edward leaves the marriage with $24,134, and Tammy with $39,868.

Finally, the trial court awarded Tammy maintenance of $214 biweekly ($463.67 per month), subject to modification or termination as provided by statute (750 ILCS 5/510 (West 1996)). Accordingly, from Edward's monthly net income of $3,100, he must pay Tammy $619.67 as child support and $463.67 as maintenance, leaving him with $2,016.66. He also receives $78 child support, a total of $2,094.66. From Tammy's monthly net income of $490, she must pay child support of $78, leaving her with $412. She also receives $619.67 as child support and $463.67 as maintenance, a total of $1,495.34, as compared to Edward's $2,094.66.

Edward appeals, arguing the trial court should have denied maintenance altogether or in the alternative should have awarded time-limited/reviewable maintenance and ordered Tammy to seek employment. We affirm.

■ Is an award of maintenance generally necessary following a lengthy marriage? That was true in past years, where the only decree possible was one of judicial separation, where the wife was not allowed to hold property in her own name, or where property was awarded to the person in whose name it was titled, usually the husband. See 2 H. Clark, Domestic Relations § 17.1, at 220 (2d ed. 1987); 1 H. Gitlin, Gitlin on Divorce § 15—12, at 633 (2d ed. 1997). The Illinois Marriage

and Dissolution of Marriage Act (Marriage Act), enacted in 1977 (Ill. Rev. Stat. 1977, ch. 40, pars. 101 through 802), sought to "encourage the court to provide for the financial needs of the spouses by property disposition rather than by an award of maintenance." Uniform Marriage and Divorce Act § 308, 9A U.L.A. 447, Comment (1998). Under the Marriage Act, the major consideration in awarding maintenance is the necessity to obviate marriage-conditioned needs and to enable a formerly dependent spouse to acquire financial independence for the future. *In re Marriage of Mittra*, 114 Ill. App. 3d 627, 635, 450 N.E.2d 1229, 1234 (1983). There are, of course, cases where it is so clear that the recipient is not employable or is employable only at a low income compared to the previous standard of living that it is appropriate to award maintenance without a provision for review. *In re Marriage of Minear*, 287 Ill. App. 3d 1073, 1082, 679 N.E.2d 856, 863-64 (1997), *aff'd*, 181 Ill. 2d 552, 693 N.E.2d 379 (1998).

Is it still true, following the 1993 amendments to section 504 of the Marriage Act (750 ILCS 5/504 (West 1992)), that trial courts awarding maintenance should focus on obviating marriage-conditioned needs and achieving financial independence? See *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 834-36, 633 N.E.2d 82, 96-97 (1994) (Steigmann, J., specially concurring). We conclude that although the 1993 amendments made it easier for maintenance to be awarded, the amendments did not change the underlying approach that maintenance should only be awarded when necessary. Maintenance is not the absolute right of every party to a marriage. For example, a man who is married to a wealthy woman for a few years, and is not disadvantaged in his future earning capacity by the marriage, is not entitled to live at the standard of living of the marriage for the rest of his life.

The statement is often repeated:

> "[W]here the spouse from whom maintenance is sought has sufficient income to meet his own needs while meeting those of his spouse, the spouse seeking maintenance is not required to sell her assets or impair her capital in order to maintain herself in the manner established during the marriage." (Emphasis omitted.) *In re Marriage of Thornton*, 89 Ill. App. 3d 1078, 1088, 412 N.E.2d 1336, 1344 (1980).

That statement does not mean that every spouse who can afford to pay maintenance should be ordered to do so. The *Thornton* court emphasized that in the case before it the spouse seeking maintenance had not received a substantial property award. *Thornton*, 89 Ill. App. 3d at 1088, 412 N.E.2d at 1344. In *Thornton*, the wife was 40 at the time of the dissolution of marriage, the marriage had lasted 11 years and produced 4 children, the husband had several million dollars of

nonmarital property, and the parties had a wonderful standard of living, although there was only $171,784 of marital property, most of which was awarded to the husband.

Maintenance issues are presented in a great number of factual situations and resist a simple analysis. In the situation where a woman in her 40's marries a wealthy man and their marriage is dissolved when she is in her 60's, a court may logically conclude that she should continue at the standard of living of the marriage for the rest of her life, even though she has not been particularly disadvantaged by the marriage, that is to say, even though there are no marriage-conditioned needs, and even though there is no marital property. "[M]an, like a tree in the cleft of a rock, gradually shapes his roots to his surroundings, and when the roots have grown to a certain size, can't be displaced without cutting at his life." Letter from Justice Oliver Wendell Holmes to William James (April 1, 1907), as published in M. Lerner, The Mind and Faith of Justice Holmes 417-18 (1953). The present case is, of course, much different, not involving a 20-year marriage, and not involving a woman in the final years of her life, but a woman with perhaps 30 or 35 years left in her working career.

The present case is not a case where the wife was given an award of permanent maintenance just because the husband could afford it or because of some presumption in favor of awards of maintenance.

"There is no question but that Illinois courts give consideration to a more permanent award of maintenance to wives who have undertaken to have children, raise and support the family, and who have lost or been substantially impaired in maintaining their skills for continued employment during the years when the husband was getting his education and becoming established." *In re Marriage of Rubinstein*, 145 Ill. App. 3d 31, 40, 495 N.E.2d 659, 665 (1986).

The trial court could well have concluded that Tammy, because of her delayed entry into the workforce, had been disadvantaged by the marriage in comparison to Edward. Perhaps she was not greatly disadvantaged, but then she was only awarded maintenance of $463 per month.

Despite one spouse's needs and the other's abilities, a marriage of short duration may not justify maintenance. *In re Marriage of Goldstein*, 97 Ill. App. 3d 1023, 1029, 423 N.E.2d 1201, 1205 (1981); *In re Marriage of Pearson*, 236 Ill. App. 3d 337, 347-48, 603 N.E.2d 720, 728 (1992) (maintenance may be appropriate "after a long marriage"). We cannot say the trial court erred here in concluding the marriage was long enough to justify maintenance.

■ Edward argues on appeal that the maintenance award should be reviewable and Tammy should be required to seek employment. The maintenance award, however, is reviewable, and Tammy is

required to seek employment. Section 510(a) provides that maintenance may be modified, upon a showing of a substantial change of circumstances. 750 ILCS 5/510(a) (West 1996). Modification may include termination. *In re Marriage of Lenkner*, 241 Ill. App. 3d 15, 18, 608 N.E.2d 897, 900 (1993). The failure of the recipient to make good-faith efforts to achieve financial independence (*e.g.*, to seek employment) can be the basis for a petition for modification pursuant to section 510(a). *Mittra*, 114 Ill. App. 3d at 635, 450 N.E.2d at 1234; *In re Marriage of Gunn*, 233 Ill. App. 3d 165, 180, 598 N.E.2d 1013, 1023 (1992). It has also been held that an award for a fixed term may be extended (or shortened). *Rice v. Rice*, 173 Ill. App. 3d 1098, 1102, 528 N.E.2d 14, 17 (1988); *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 825-27, 597 N.E.2d 847, 861-62 (1992). The only apparent difference between a permanent award of maintenance with no provision for review and a fixed award for a period of years is the placement of the burden of proof.

Sometimes reviewing courts complain that trial courts have engaged in "speculation" when they provide too long a period of maintenance or too short a period of maintenance, without review. *In re Marriage of Heller*, 153 Ill. App. 3d 224, 505 N.E.2d 1294 (1987) (error to award maintenance without a provision for review); *In re Marriage of Girrulat*, 219 Ill. App. 3d 164, 578 N.E.2d 1380 (1991) (same); *In re Marriage of Wisniewski*, 107 Ill. App. 3d 711, 437 N.E.2d 1300 (1982) (award of indefinite maintenance an abuse of discretion). There are some advantages to fixed periods of maintenance that are not subject to review or modification. Such awards provide incentive to maintenance recipients to achieve financial independence, and they allow the parties to plan for the future. See *In re Marriage of Harlow*, 251 Ill. App. 3d 152, 162-66, 621 N.E.2d 929, 937-40 (1993) (McCullough, J., dissenting). The trend, however, seems to be for reviewability and modifiability in maintenance awards. In any event, trial courts are best equipped to determine whether the time fixed for review is appropriate to determine what progress the maintenance recipient has made toward economic improvement. 1 H. Gitlin, Gitlin on Divorce § 15—12(c), at 645-46 (2d ed. 1997). In the present case, we cannot say it was improper to place the burden of proof on Edward to show that a substantial change of circumstances had occurred in order to terminate or reduce maintenance. Tammy has incentive to improve her economic situation even without a limited period of maintenance.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

KNECHT, J., concurs.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent. The trial court abused its discretion in awarding permanent maintenance. Tammy was 32 years old and employable with a potential work career spanning at least 30 to 35 years. Her child is school age. She has no apparent health impairments that might restrict her from working. She is apparently educable. She graduated from high school and has attended floral conferences, craft classes and painting classes. Yet, Tammy has done little toward finding a job or obtaining job training or education because she says Edward had promised to support her when they were first married.

The trial court, therefore, should have awarded rehabilitative maintenance. Edward should not bear the burden of showing a substantial change in circumstances before maintenance can be terminated or modified. Moreover, the trial court should have ordered Tammy to seek employment. Nothing in the trial court's judgment serves as an incentive to Tammy to achieve complete financial independence. The award entered simply prolongs Tammy's dependence, Edward's litigation expenses, and obviates judicial economy.

I would reverse the trial court's award of permanent maintenance and remand for entry of an order of rehabilitative maintenance and required employment.