NO. 4-00-0067

31 October 2000

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Marriage of ) Appeal from

LAWRENCE P. DRURY, JR.,          ) Circuit Court of

Petitioner-Appellee, ) Sangamon County

          and ) No. 98D795

PHYLLIS E. DRURY, ) 

Respondent-Appellant. ) Honorable

) Stuart H. Shiffman,

          )    Judge Presiding.

_________________________________________________________________

JUSTICE GARMAN delivered the opinion of the court:

In November 1999, the trial court entered a judgment dissolving the marriage of petitioner, Lawrence Drury, Jr., and respondent, Phyllis Drury.  In its judgment, the court ordered Lawrence to pay Phyllis $600 per month in rehabilitative mainte

nance for 36 months.  In its property distribution, the court ordered the parties to be responsible for debts included in their respective affidavits.  Phyllis filed a motion to reconsider in December 1999, which the court denied.  Phyllis appeals the trial court's order, arguing that (1) she is entitled to permanent maintenance or, in the alternative, reviewable maintenance and (2) the trial court erred when it held her responsible for the entire third mortgage and Shell credit card debt.  We affirm in part, reverse in part, and remand with directions.

I.  BACKGROUND

Lawrence and Phyllis were married in August 1970.  During their 29-year marriage, they had four children:  Sara, born in March 1975; Lawrence, born in July 1976; Emily, born in February 1980; and Michael, born in March 1982.  The family resided in Chatham, Illinois.  At the time of the hearing, August 1999, the two eldest children were emancipated, Emily was entering her sophomore year of college, and Michael was to be a junior in high school.

In the first three years of their marriage, Phyllis taught high school physical education in Chatham.  She became a substitute and part-time teacher in 1990.  During the course of their marriage, Phyllis had primary responsibility for taking care of the marital home and raising the children.  In 1998, Phyllis obtained her first full-time teaching position in 25 years with Springfield School District 186.  Her nontenured position was funded by a one-year grant for a salary of $30,357.08.  At the time of the hearing, Phyllis had enrolled in graduate school at the University of Illinois.  She planned on attending classes one evening per week throughout the school year and the summer to obtain her master's degree in special education.

Lawrence Drury filed a petition for dissolution of marriage on September 21, 1998.  Both parties were 50 years old at the time of the petition.  For 14 years, Lawrence worked as an executive director for Catholic Charities at a salary of $70,000 per year.  When the Drurys separated, Lawrence moved to Kansas City, Missouri, and commenced employment with the National Federation of Interfaith and Volunteer Caregivers at an annual salary of $77,000.  Lawrence provided approximately $2,000 per month to Phyllis for support until November 15, 1998.  At that time, he substituted mortgage and insurance payments in lieu of support.

The marital residence, in which Phyllis and Lawrence resided for 14 years, is subject to three mortgages with an amount due in excess of $80,000.  In their affidavits, both Phyllis and Lawrence claimed the mortgage payments in addition to various family insurance payments as part of their monthly living expenses.  As stated, Lawrence had been making those payments prior to the trial court's judgment.  Lawrence claimed a total net monthly income of $4,270.39 and a total monthly living expense of $4,111.48.  Phyllis claimed $1,623.72 as total net monthly income and $3,362.50 as total monthly expenses.

In the trial court's judgment of dissolution it awarded custody of the youngest son, Michael, to Phyllis and awarded child support of $850 per month.  The court ordered Lawrence to pay $600-

per-month rehabilitative maintenance to Phyllis for 36 months.  In addition, the court awarded Phyllis (1) the marital residence subject to the first and second mortgage indebtedness, (2) the cabin, (3) her teacher's retirement pension, and (4) $28,000 from Lawrence's present pension benefits.  The court also ordered each party be responsible for the debts listed in their respective affidavits.  In effect, this held Phyllis responsible for the Shell credit card; her attorney fees; and various loans, including a $6,321.94 debt to the Teacher’s Retirement System and the first and second mortgages.  Although not specifically stated in the judgment, the order apparently allocated responsibility for the third mortgage to Phyllis since her affidavit listed a car payment as a debt.  The parties had used the third mortgage to finance family vehicles, including Phyllis’ and Emily’s cars.  The trial court awarded Lawrence the remainder of his $88,414.64 pension.  He did not list any mortgage or insurance payments as debt in his affidavit; only personal credit card bills and attorney fees.

On December 3, 1999, Phyllis filed a motion to reconsider the judgment and requested the trial court to address the third mortgage, allocate responsibility for the Shell credit card debt, and review the maintenance award after 36 months instead of terminating it.  The trial court denied respondent's motion to reconsider.  

This appeal followed.

II.  ANALYSIS

Phyllis argues on appeal that she is entitled to permanent maintenance or, in the alternative, maintenance subject to review at a certain time.  An award of maintenance is within the sound discretion of the trial court and should not be reversed unless it constitutes an abuse of discretion or is against the manifest weight of the evidence.  
In re Marriage of Harlow
, 251 Ill. App. 3d 152, 156, 621 N.E.2d 929, 933 (1993).  

The Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503 
et
 
seq
. (West Supp. 1999)) lists 12 factors to be considered by the trial court in its maintenance determina

tion.  These include (1) the income and property of each party; (2) the needs of each party; (3) the present and future earning capacity of each party; (4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having foregone or delayed education, training, employment, or career opportunities due to the marriage; (5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment; (6) the standard of living established during the marriage; (7) the duration of the marriage; (8) the age and physical and emotional condition of both parties; (9) the tax consequences of the property division; (10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse; (11) any valid agreement of the parties; and (12) any other factor that the court expressly finds to be just and equitable.  750 ILCS 5/504(a) (West Supp. 1999); 
In re Marriage of Koberlein
, 281 Ill. App. 3d 880, 883, 667 N.E.2d 695, 698 (1996). 

As described above, sections 504(a)(3) and (a)(4) of the Act (750 ILCS 5/504(a)(3), (a)(4) (West Supp. 1999)) require the trial court to take into consideration the present and future earning capacity of the parties and any impairment to the capacity of the party seeking maintenance due to that spouse's domestic contribution to the household or foregone career opportunities due to the marriage.

"Marriage is a partnership, not only morally, but financially.  Spouses are co

equals, and homemaker services must be recog

nized as significant when the economic inci

dents of divorce are determined.  Petitioner should not be penalized for having performed her assignment under the agreed-upon division of labor within the family.  It is inequitable upon dissolution to saddle petitioner with the burden of her reduced earning potential and to allow respondent to continue in the advanta

geous position he reached through their joint efforts."  
In re Marriage of Hart
, 194 Ill. App. 3d 839, 853, 551 N.E.2d 737, 745 (1990) (Steigmann, J., specially concurring).

Phyllis' earning capacity at the time of the hearing was approximately $30,000 per year while Lawrence's was more than double at $77,000 per year.  Phyllis gave up her teaching career in 1973 to take care of the marital home and raise the family.  Not until quite recently did she obtain a full-time teaching position with the Springfield School District.  It is undisputed that if she had worked all the years she stayed at home, her salary would be much greater than it is today.  Phyllis would be in a tenured position and she would have significant retirement benefits.  Instead of enjoying career stability at this stage in her life, Phyllis is teaching in a nontenured position funded by a one-year grant.  At age 51, Phyllis had enrolled in a class to commence work for her master's degree.  She is only able to take one class per semester and will not be able to obtain her degree for some time.  Lawrence, on the other hand, worked for 14 years earning $70,000 per year at Catholic Charities.  He had the opportunity, supported by his wife's decision to stay at home, to advance his career.  As a result, he enjoys a present and future earning capacity that is substantially greater than that of his former wife, whose earning capacity has been impaired by sacrificing her career to raise the family. 

"There is no question but that Illinois courts give consideration to a more permanent award of maintenance to wives who have under

taken to have children, raise and support the family, and who have lost or been substan

tially impaired in maintaining their skills for continued employment during the years when the husband was getting his education and becoming established."  
In re Marriage of Rubinstein
, 145 Ill. App. 3d 31, 40, 495 N.E.2d 659, 665 (1986).

Sections 504(a)(1) and (a)(6) of the Act (750 ILCS 5/504(a)(1), (a)(6) (West Supp. 1999)) require the court to consider the income and property of each party and the standard of living established during the marriage, respectively.  Phyllis did not receive significant assets from the property distribution.  The cabin, with no encumbrances, has a value of $14,000.  The marital residence, however, is subject to significant encumbrances.  If sold, it would have an equity of approximately $13,000.  Also, she will not be able to enjoy her pension benefits or the portion of Lawrence's pension that she was awarded for some time.  The court ordered Phyllis held responsible for the first and second mortgages and the car payment (the third mortgage).  In addition, she must make the payments on various loans and the family's Shell credit card, which has a balance in excess of $6,000. 

Likewise, Lawrence did not receive significant assets from the distribution.  The trial court awarded him various personal property and the remainder of his $88,414.64 pension.  However, the court held him harmless from the mortgage payments; thus, the only encumbrances he is responsible for are personal credit card payments and attorney fees.

Although not receiving many assets from the property distribution, Lawrence's standard of living clearly exceeds Phyllis'.  Even if Phyllis successfully completes her master's degree in the future, Lawrence will continue to enjoy a higher standard of living.  Moreover, Phyllis' living standard has decreased with the dissolution of the marriage.  The court in 
In re Marriage of Sisul
, 234 Ill. App. 3d 1038, 1039-40, 600 N.E.2d 86, 88 (1992), stated: 

    "One objective of the Act is to encourage a formerly dependent spouse to become finan

cially independent in the future, if possible. [Citation.]  However, the trial court should bear in mind that financial independence does not mean the ability to merely meet one's minimum requirements, but entails the ability to earn an income which will provide a stan

dard of living similar to that enjoyed during the marriage."

If Phyllis is required to continue mortgage payments, her monthly expenses of $3,362.50 will exceed her monthly income of $1,623.72.  Even with the temporary payments of child support and maintenance established by the trial court, she falls short of meeting her monthly expenses.  Without assistance, she will be unable to maintain the payments and will be forced to sell the marital residence.

A spouse seeking maintenance should not be required to sell assets or impair capital to maintain herself in a manner commensurate with the standard of living established in the marriage as long as the payor spouse has sufficient assets to meet both his needs and the needs of his former spouse.  
Koberlein
, 281 Ill. App. 3d at 885, 667 N.E.2d at 699; 
Harlow
, 251 Ill. App. 3d at 157-58, 621 N.E.2d at 934. 

In addition to indicating section 504 factors that support an award of permanent maintenance, Phyllis points to 
In re Marriage of Harlow
, 251 Ill. App. 3d 152, 621 N.E.2d 929 (1993).  In 
Harlow
, this court held that the trial court abused its discretion by reducing and extending maintenance for only one year and thereafter terminating it.  
Harlow
, 251 Ill. App. 3d at 160, 621 N.E.2d at 936.  The wife had primary responsibility for domestic chores and raising the couple's three children.  
Harlow
, 251 Ill. App. 3d at 153-54, 621 N.E.2d at 931.  During the marriage, she held various jobs and worked approximately 22 of their 32 years together.  
Harlow
, 251 Ill. App. 3d at 161, 621 N.E.2d at 936.  After the dissolution of marriage but prior to the first review hearing, she completed her associate's degree in management but had not received any job offers.  
Harlow
, 251 Ill. App. 3d at 155, 621 N.E.2d at 932.  By the time of the second review hearing, she had taken a part-time job with an annual salary of approximately $12,500.  
Harlow
, 251 Ill. App. 3d at 156, 621 N.E.2d at 933.  The husband had worked for Illinois Power since 1979 and, in 1991, he earned $43,583.

In its judgment of dissolution, the trial court ordered the husband to pay maintenance of $500 per month through May 1992, subject to review at that time by a petition of either party.  The ex-wife filed a petition for review.  
Harlow
, 251 Ill. App. 3d at 155, 621 N.E.2d at 932.  At the conclusion of the review hearing, the court ordered the ex-husband to continue paying $500 per month through August 1992, at which time another hearing would be held.  
Harlow
, 251 Ill. App. 3d at 155-56, 621 N.E.2d at 933.  In August 1992, the court ordered the maintenance reduced to $300 per month and to continue to August 1993, at which time it would terminate.  
Harlow
, 251 Ill. App. 3d at 156, 621 N.E.2d at 933.

This court found that the trial court abused its discretion and noted that (1) due to her salary, the ex-wife will have to expend her assets to meet her living expenses; (2) she will not earn enough money to enjoy the same standard of living that she enjoyed during the marriage; (3) the ex-husband is able to meet his needs as well as contribute to her needs; (4) her decision to stay at home allowed him to continue his employment without interrup

tion; (5) she is not seeking to maintain a luxurious lifestyle; and (6) the 32-year marriage was of significant duration.  
Harlow
, 251 Ill. App. 3d at 159-60, 621 N.E.2d at 935-36.

Phyllis also advocates that 
In re Marriage of Mayhall
, 311 Ill. App. 3d 765, 725 N.E.2d 22 (2000), supports reversal of the trial court here in favor of an award of permanent maintenance.  In 
Mayhall
, this court affirmed an award of $463.67-per-month permanent maintenance to the former wife after the dissolution of a 13-year marriage.  
Mayhall
, 311 Ill. App. 3d at 766, 767, 771, 725 N.E.2d at 23, 24, 26.  At the time of judgment, the husband was 34 years old and earned $3,100 per month.  The wife was 32 years old, had a high school education, and earned approximately $490 per month.  
Mayhall
, 311 Ill. App. 3d at 766-67, 725 N.E.2d at 23.  
After the property distribution, this court calculated that the husband left the marriage with $24,134 and the wife with $39,868.  
Mayhall
, 311 Ill. App. 3d at 767, 725 N.E.2d at 24.  This court concluded that it was not "improper to place the burden of proof on [the husband] to show that a substantial change of circumstances had occurred *** to terminate or reduce maintenance."  
Mayhall
, 311 Ill. App. 3d at 770, 725 N.E.2d at 26.

We agree that 
Mayhall
 and 
Harlow
 do support an award of permanent maintenance here; however, "[m]aintenance issues are presented in a great number of factual situations and resist a simple analysis."  
Mayhall
, 311 Ill. App. 3d at 769, 725 N.E.2d at 25.

     Lawrence argues that this case is similar to 
Koberlein
, 281 Ill. App. 3d at 882, 885, 667 N.E.2d at 697, 699, where this court affirmed a maintenance award of $200 per month for 18 months.  The husband in 
Koberlein
 maintained farming operations on 
the parties' grain and livestock farm while the wife occasionally worked part-time jobs, along with her primary role of homemaker.  At the time of the dissolution, the wife earned $180 per week as a teacher's assistant at a day-care facility.  
Koberlein
, 281 Ill. App. 3d at 881, 667 N.E.2d at 696-97.  She estimated her monthly living expenses at $2,157.  The husband's financial affidavit listed $1,961 in average monthly income and $2,070 in average monthly expenses.  He had a current bank account that contained approximately $20,000 but he explained that the savings were due to low inventory levels and also resulted from 20 years of farm operation.  
Koberlein
, 281 Ill. App. 3d at 881, 667 N.E. at 697.  Instead of selling the farm, the trial court ordered the husband to pay his former spouse $66,000 at 9% interest over 10 years in addition to an agreed-upon lump-sum payment of $25,000.  The husband received 49% of the marital assets, and the wife received 51%.  
Koberlein
, 281 Ill. App. 3d at 881-82, 667 N.E.2d at 697.  The trial court awarded custody of the parties' nine-year-old child to the husband, and, as stated, the husband was ordered to pay maintenance of $200 per month for 18 months.  
Koberlein
, 281 Ill. App. 3d at 881-82, 667 N.E.2d at 697.

The court in 
Koberlein
 stated that some of the section 504 factors justified permanent maintenance, such as the wife's limited earning capacity, limited by her domestic duties over the years, her high school education, and the couple's lengthy marriage in excess of 30 years.  
Koberlein
, 281 Ill. App. 3d at 884, 667 N.E.2d at 699.  However, other factors supported the trial court's decision of limited maintenance, namely, the fact that the husband received custody of their son, the wife received one-half of the marital property and will be receiving $91,000 over the next 10 years, the modest marital standard of living, and the wife's relatively young age of 51.  
Koberlein
, 281 Ill. App. 3d at 884-85, 667 N.E.2d at 699.

Koberlein
 can be distinguished on several grounds.  First, the husband in 
Koberlein
 lacked the ability to meet his own needs and provide for the needs of his former spouse.  This court held that "the trial court could reasonably have concluded [the husband] simply did not have the financial resources to justify an award of permanent maintenance."  
Koberlein
, 281 Ill. App. 3d at 885, 667 N.E.2d at 699.  In this case, Lawrence has a monthly income of $4,270.39.  He is fully capable of meeting his own needs while at the same time contributing to Phyllis' standard of living.

Second, 
Koberlein
 can be distinguished based on the large marital property award to the spouse seeking maintenance.  In 
Koberlein
, 281 Ill. App. 3d at 882, 884, 667 N.E.2d at 697, 699, the couple split the marital property, but the wife received a substantial sum of cash payments; a total of $91,000 over the next 10 years.  An award of maintenance must be balanced against the marital property award.  
Koberlein
, 281 Ill. App. 3d at 884, 667 N.E.2d at 699; see 
In re Marriage of Mayhall
, 311 Ill. App. 3d 765, 768, 725 N.E.2d 22, 25 (2000).  Here, Phyllis did not receive any significant assets and received no cash payments from the property settlement.  She will need to sell her limited assets to receive cash.

Finally, in 
Koberlein
, the payor spouse was awarded custody of the nine-year-old child.  This put a financial burden on the husband and factored into the temporary maintenance award.  
Koberlein
, 281 Ill. App. at 884, 667 N.E.2d at 699.  Phyllis received custody of Michael and will need to support him until he is emancipated.  Lawrence's ability to pay is not affected by primary responsibility for a child.

Lawrence also argues that 
In re Smith
, 265 Ill. App. 3d 249, 638 N.E.2d 384 (1994), requires affirmance of the trial court's decision.  In 
Smith
, 265 Ill. App. 3d at 251, 638 N.E.2d at 385, the husband and wife were married for 23 years.  The wife had an annual salary of approximately $17,477 while the husband made about $46,000 per year.  
Smith
, 265 Ill. App. 3d at 250-51, 638 N.E.2d at 386.  The trial court provided an even split of the marital property.  To equalize distribution, the court ordered the sale of the marital home with the wife receiving the first $37,000 of the proceeds, plus a one-time maintenance payment of $8,000 also to be made from the proceeds.  
Smith
, 265 Ill. App. 3d at 252, 638 N.E.2d at 386-87.  On appeal, the wife argued that the trial court erred in awarding her maintenance payments out of the proceeds of the sale of the marital home because that property was already one-

half hers.  This court affirmed the award of maintenance but did not analyze any question pertaining to the duration of the maintenance award; and, in fact, the defendant did not challenge the duration of the maintenance
.  
Smith
, 265 Ill. App. 3d at 256, 638 N.E.2d at 389.  
Smith
 is irrelevant to the issue presented in this case.

We hold that the trial court abused its discretion in terminating the $600-per-month maintenance award at the end of 36 months and remand for the court to enter an order making the $600 per month award permanent maintenance.  We conclude that (1) there is a significant disparity in the present and future earning capacities of the parties; (2) Lawrence had the opportunity to continue and advance his career during the marriage because of Phyllis' contributions to the family; (3) Phyllis will not be able to enjoy a standard of living similar to the one she enjoyed during the marriage; (4) she will be forced to sell her limited assets to meet her needs; (5) Lawrence is able to contribute to Phyllis' needs while still meeting his own; and (6) the 29-year marriage was of significant duration.  

Phyllis further argues on appeal that the trial court erred in its property division when it held her responsible for the entire third mortgage and the entire amount of the Shell credit card debt.  The distribution of marital property rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion.  
In re Marriage of Ligas
, 110 Ill. App. 3d 1, 5, 441 N.E.2d 1277, 1281 (1982).  Section 503(d) of the Act (750 ILCS 5/503(d) (West 1998)) sets out factors for the trial court to take into consideration when dividing marital property.  The touchstone of proper apportionment is whether it is equitable in nature.  
In re Marriage of Wade
, 158 Ill. App. 3d 255, 268, 511 N.E.2d 156, 165 (1987).  The trial court is not required by the statute to divide the property with mathematical equality.  
Wade
, 158 Ill. App. 3d at 268, 511 N.E.2d at 165.

We find no abuse of discretion by the trial court in its property division.  It is unclear from the record the total owed on the third mortgage, but the record reflects a monthly car payment of $411.90.  In addition, Phyllis lists a monthly payment of $200 on the Shell credit card with an outstanding balance of $6,852.92 as of August 3, 1999.  Phyllis admits that her objection to the trial court's overall scheme is "relatively minor."  We will not reverse the decision of the trial court because a party is unhappy with the outcome.  "Merely because a party is unhappy with the disposition does not mean that the disposition is unfair."  
Ligas
, 110 Ill. App. 3d at 6, 441 N.E.2d at 1281. 

III. CONCLUSION

Accordingly, we affirm the trial court's distribution of property, reverse the maintenance award of $600 per month for 36 months as to its duration, and remand for the entry of judgment granting permanent maintenance of $600 per month.  

Affirmed in part and reversed in part; cause remanded with directions. 

COOK and MYERSCOUGH, JJ., concur.