Filed 6/27/08          NO. 4-07-0621

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: the Marriage of LELA ANN BRATCHER, | ) ) | Appeal from Circuit Court of |
|      Petitioner-Appellee, | ) | McLean County |
|      and | ) | No. 04D202 |
| DAVID L. BRATCHER, | ) | |
|      Respondent-Appellant. | ) | Honorable |
| | ) | Rebecca Simmons Foley, |
| | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

Petitioner, Lela Ann Bratcher, and respondent, David L. Bratcher, were married in 1972, the year they graduated from high school. Neither has a college education. They have two children, born in 1973 and 1976. On May 7, 2004, Lela filed a petition for dissolution of marriage. At that time, the parties were each 50 years of age. On November 29, 2006, the trial court entered a judgment of dissolution of marriage, awarding each party the personal property in his or her possession and dividing equally the remaining marital property, with each receiving about $1,634,000. Additionally, the trial court ordered David to pay maintenance of $12,500 per month for a period of 111 months. David appeals the award of maintenance. We reverse and remand.

I. BACKGROUND

The trial court made the following findings. The parties founded Bratcher Heating and Air Conditioning in 1983.

When the parties opened the business, Lela assisted for approximately seven years in various capacities, including answering the phones, billing, payroll, hiring, decorating, and training with their supplier, Lennox. Lela also worked as a checker at a local grocery store to obtain health-insurance benefits for the family. Lela's involvement in the workforce ceased in 1992, when she became the primary caregiver of the parties' granddaughter who had a number of health problems.

The trial court found that Bratcher Heating and Air Conditioning has a value of $1,297,922. That figure included a discount of 20% for lack of marketability, finding that the business is essentially a "one man show" in terms of its management. "Dave Bratcher is Bratcher Heating and Air Conditioning. By his own admission, the business cannot run without him."

The trial court awarded Lela the former marital residence and some accounts. The primary asset awarded Lela was a commercial property on Fort Jesse Road valued at $725,000. The trial court also ordered David to make an equalizing lump-sum payment to Lela of $876,759. With the lump-sum payment, the total award of marital property to Lela, even after deducting $34,682 in credit-card debt that she was required to pay, was $1,634,449.

David was awarded Bratcher Heating and Air Conditioning, a residence, a commercial property on East Pine Street, and

a number of accounts, and he was charged with dissipation for payments he made to the parties' daughters in the amount of $6,467.  After deducting the lump-sum payment, the total award of marital property to David was $1,634,719.

Under the trial court's order, Lela will receive monthly income of approximately $14,000, consisting of $8,193 rental income on the Fort Jesse Road property and $5,845 interest at 8% on the lump-sum payment, plus perhaps some income from her anticipated work as a realtor.  In ruling on David's motion to reconsider, the trial court noted that the rental income on the Fort Jesse Road property "is less certain" than the higher amount argued by David, $10,829.  David will receive monthly income of approximately $27,000, consisting of $9,013 wages, $417 dividends, $1,710 rental income on the East Pine Street property, and $21,900 other income from Bratcher Heating and Air Conditioning, reduced by $5,845 interest on the lump-sum payment.  If mainte- nance is factored in, Lela will have monthly income of $26,500 and David will have monthly income of $14,500.

In awarding maintenance, the trial court noted that in terms of personal incomes, Lela would never generate the type of income that David produces.

"While the Court declines to 'equalize' the
parties' income by virtue of the maintenance
award, it does find that it can look beyond

- 3 -

the basic needs of the parties and allow for
additional, discretionary income, particu-
larly in a marriage of this duration with the
amount of income available for the Court's
consideration.  As referenced above, the
parties' venture into the business world was
truly a joint effort."

The trial court also quoted from Justice Steigmann's special
concurrence in In re Marriage of Hart, 194 Ill. App. 3d 839, 853,
551 N.E.2d 737, 745 (1990) (Steigmann, J., specially concurring):

"Marriage is a partnership, not only
morally, but financially.  ***  It is inequi-
table upon dissolution to saddle petitioner
with the burden of her reduced earning poten-
tial and to allow respondent to continue in
the advantageous position he reached through
their joint efforts."

## II. ANALYSIS

"Maintenance issues are presented in a great number of
factual situations and resist a simple analysis." In re Marriage
of Mayhall, 311 Ill. App. 3d 765, 769, 725 N.E.2d 22, 25 (2000).
"The trial court has discretion to determine the propriety,
amount, and duration of a maintenance award.  A reviewing court
will not reverse the trial court's maintenance determination

absent an abuse of discretion." In re Marriage of Reynard, 344 Ill. App. 3d 785, 790, 801 N.E.2d 591, 595 (2003) (Reynard I). Of course, that does not mean that trial courts can do whatever they please in awarding maintenance. It is important that reviewing courts have some ability to maintain control of and clarify the legal principles underlying maintenance awards.

With the enactment of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/101 et seq. (2006)) in 1977, the legislature sought to provide for the financial needs of the spouses through the disposition of property rather than through maintenance. Mayhall, 311 Ill. App. 3d at 768, 725 N.E.2d at 24. The 1993 amendments to the Dissolution Act made it easier for maintenance to be awarded, but maintenance is not the absolute right of every party to a marriage and should mainly be reserved for circumstances of necessity. Mayhall, 311 Ill. App. 3d at 768, 725 N.E.2d at 24.

It is interesting to compare the facts in this case to those in In re Marriage of Rubinstein, 145 Ill. App. 3d 31, 495 N.E.2d 659 (1986), where the parties were married after graduating from college and the wife then taught school for 10 years while the husband pursued his medical education and training. Shortly after the husband commenced his medical practice, he filed for dissolution of marriage. The Second District reversed and remanded, stating, "[T]he contributing spouse must receive

some _form_ _of_ _compensation_ for the financial effort and support provided to the student spouse in the expectation that the marital unit will prosper in the future particularly where, as here, Harry filed the suit for divorce so soon after Helen completed her part of the bargain." (Emphasis added.) Rubinstein, 145 Ill. App. 3d at 39, 495 N.E.2d at 664. In Rubinstein, that compensation could not be achieved by division of marital assets, because the dissolution occurred before significant assets were acquired.

That is not true in the present case where the parties had acquired several millions of dollars in assets and Lela was awarded half of those assets. Lela was not "saddle[d] *** with the burden of her reduced earning potential" (Hart, 194 Ill. App. 3d at 853, 551 N.E.2d at 745)--she was awarded assets totaling more than the value of the business. It is true that Lela will never generate the income that David does, but there is no need for Lela to work. In some cases, the family business may constitute almost all of the assets and it may be necessary to award that business to the operator of the business and compensate the other spouse through maintenance. That is not true in the present case where Lela was awarded substantial assets, including a $876,759 lump-sum payment, similar to maintenance in gross. Lela made important contributions to the business in its early years, but she has been compensated for those contributions.

- 6 -

In awarding maintenance, the court may consider impairment of earning capacity due to "devoting time to domestic duties or having foregone or delayed education, training, employment, or career opportunities due to the marriage."  750 ILCS 5/504(a)(4) (West 2006).  The court may also consider "contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse."  750 ILCS 5/504(a)(10) (West 2006).  In Mayhall, the parties were married after high school and their marriage was dissolved 14 years later.  The wife maintained the household and was the primary caretaker of the parties' two children.  We affirmed an award of maintenance to the wife on the basis she had been disadvantaged by the marriage in comparison to her husband because of her delayed entry into the workforce.  Mayhall, 311 Ill. App. 3d at 769, 725 N.E.2d at 25.  Mayhall, however, involved average-income earners with no substantial assets, not the situation here.  Lela's earning capacity would probably be greater if she had worked continuously outside the home after the parties' marriage, but it would never have approached David's.  Lela was not "disadvantaged by the marriage in comparison to" David.  Mayhall, 311 Ill. App. 3d at 769, 725 N.E.2d at 25.

Equalization of incomes might be appropriate even though neither spouse has been disadvantaged by the marriage, where the parties have been married for many years, they have few

assets, and both have been employed with one spouse earning more than the other. Mayhall, 311 Ill. App. 3d at 769, 725 N.E.2d at 25. Again, that is not the situation here. It is not necessary to equalize the income of these parties so that they may continue at the standard of living enjoyed during the marriage. This case involved sufficient assets to make a substantial award to Lela, and the lump-sum distribution eliminated any inequality between the parties.

The trial court abused its discretion in its award of maintenance. The trial court properly provided for Lela by its division of marital property. Where it is possible to do so, a division of property that adequately provides for the parties is preferable to an award of maintenance. Lela has the advantage of certainty with the lump-sum payment; it cannot be modified or terminated in the future. The fact that David could afford to pay some maintenance is not a reason for ordering him to do so.

### III. CONCLUSION

We reverse the award of maintenance in this case and remand so that the trial court may reconsider its award in accordance with the views expressed in this opinion.

Reversed and remanded.

TURNER, J., specially concurs.

MYERSCOUGH, J., dissents.

- 8 -

JUSTICE TURNER, specially concurring:

Since I find the maintenance award was excessive in light of the factors contained in section 504(a) of the Dissolution Act (750 ILCS 5/504(a) (West 2004)), I agree the trial court abused its discretion in determining the amount of maintenance and remand is warranted. However, I write separately to emphasize a particular point.

In accordance with a plethora of case law, the trial court bore a duty to determine maintenance based upon "'the reasonable needs of the spouse seeking maintenance in view of the standard of living established during the marriage.'" In re Marriage of Selinger, 351 Ill. App. 3d 611, 615, 814 N.E.2d 152, 157 (2004), quoting In re Marriage of Tietz, 238 Ill. App. 3d 965, 972, 605 N.E.2d 670, 676 (1992). Neither of the trial court's letter rulings demonstrates it considered this well-settled benchmark in fashioning its maintenance award.

While petitioner submitted an "Imputed Financial Affairs Affidavit" and the trial court considered it in determining maintenance, the evidence at trial failed to show the affidavit had any relationship to the standard of living established during the marriage. Moreover, even if the affidavit accurately represented petitioner's needs in view of the standard of living established during the marriage, income from the rental property awarded to petitioner would by itself generate a substantial

- 9 -

portion of the "needs" set forth in the affidavit.  Although the rental property was not fully leased at the time of hearing, the trial court's letter ruling on the motion to reconsider appears to essentially disregard this valuable asset.  I note petitioner herself testified it was important she receive the parties' commercial property because the rental income from the property could offer her "long-term security."  Further, as was recognized in the majority opinion, petitioner also received an award of $876,759 in cash, which presumably will generate significant additional income.  See slip op. at 6.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent. I would affirm the trial court, which did an exceptional job explaining its decision. The court clearly did not abuse its discretion here. The court meticulously crafted a fair dissolution judgment. The majority creates a magical new law and is second-guessing the trial court, which is inappropriate: "Of course, that does not mean that trial courts can do whatever they please in awarding maintenance. It is important that reviewing courts have some ability to maintain control of and clarify the legal principles underlying maintenance awards." Slip op. at 4. This trial court did not do whatever it pleased. The trial court followed the law and should be affirmed. The trial court's award of maintenance and a property settlement in this high-income family does not constitute an abuse of discretion.

The amount of a maintenance award lies within the sound discretion of the trial court, and this court must not reverse that decision unless it was an abuse of discretion. Selinger, 351 Ill. App. 3d at 619, 814 N.E.2d at 161. "An abuse of discretion occurs where no reasonable person would take the view adopted by the trial court." Tietz, 238 Ill. App. 3d at 972, 605 N.E.2d at 675.

Section 504 of the Dissolution Act (750 ILCS 5/504 (West 2004)) sets forth factors the trial court is to consider

- 11 -

when fashioning a maintenance award. In considering the factors, the court is not required to give them equal weight "so long as the balance struck by the court is reasonable under the circumstances." In re Marriage of Miller, 231 Ill. App. 3d 480, 485, 595 N.E.2d 1349, 1353 (1992). "Although the trial court must consider all the relevant statutory factors, it need not make specific findings as to the reasons for its decisions." In re Marriage of Reynard, 378 Ill. App. 3d 997, 1004, 883 N.E.2d 535, 541 (2008) (Reynard II).

David argues the trial court improperly fashioned its maintenance award in an attempt to equalize the parties' disposable net income. "Neither the Dissolution Act nor Illinois case law requires the equalization of [disposable] incomes." Reynard I, 344 Ill. App. 3d at 791, 801 N.E.2d at 596. However, equalization of parties' incomes may be appropriate in some cases. Reynard I, 344 Ill. App. 3d at 792, 801 N.E.2d at 596.

"The benchmark for determination of maintenance is the reasonable needs of the spouse seeking maintenance in view of the standard of living established during the marriage." (Emphases added.) Tietz, 238 Ill. App. 3d at 972, 605 N.E.2d at 676. While one goal is for the formerly dependent spouse to become financially independent, "the trial court should bear in mind that financial independence does not mean the ability to merely meet one's minimum requirements, but entails the ability to earn

- 12 -

an income which will provide a standard of living similar to that enjoyed during the marriage." (Emphasis added.) In re Marriage of Sisul, 234 Ill App. 3d 1038, 1039-40, 600 N.E.2d 86, 88 (1992).

The trial court equalized the distribution of marital property. However, contrary to David's claims that the court equalized the parties' disposable net incomes, the court specifically stated it did not fashion its maintenance award to equalize the parties' disposable income. Regardless, whether the court equalized the parties' disposable income is irrelevant because, as stated, equalizing parties' incomes may be appropriate in some cases. Reynard I, 344 Ill. App. 3d at 792, 801 N.E.2d at 596. The real question is whether the amount of maintenance is reasonable in light of the factors set forth in section 504 of the Dissolution Act and the standard of living established during the marriage.

The trial court's November 2006 letter ruling shows the court considered the appropriate factors. The court's initial letter ruling correctly stated it was within the court's discretion to look "beyond the basic needs of the parties and allow for additional, discretionary income, particularly in a marriage of this duration with the amount of income available for the [c]ourt's consideration." The court noted that (1) Lela was 52 years of age and does not have a college education; (2) the years

spent establishing the business were a joint effort; (3) while David acted as primary breadwinner, Lela acted as primary caregiver to their daughters; (4) Lela's involvement in the workforce came to an end when she became primary caregiver to their granddaughter Olivia; (5) Lela currently generates no income but gets support from David in the amount of $5,400 per month and by his payment of the mortgage on her house; (6) Lela estimates future expenses at $9,000 per month; (7) Lela hopes to generate $20,000 per year after reestablishing herself in the real-estate business; (8) after combining David's three financial affairs affidavits, David has a monthly surplus of over $14,000 even after paying monthly expenses on behalf of Lela; and (9) the parties enjoyed a good standard of living. The court noted that Lela will never produce the type of income David produces. Further, David's exhibit Nos. A and B fail to take into consideration the considerable tax deduction he will receive for making $150,000 in maintenance payments and the tax consequences to Lela. Finally, David in large part controls how much income he receives and will control how much rental income Lela receives and, in fact, has indicated he intends to move the business from the property awarded to Lela. As he testified, he has left large amounts of profit in the business.

This couple lived a very nice lifestyle. They enjoyed substantial income. While David was the primary breadwinner,

Lela had a substantial part in helping get the business started. She was the primary caregiver to their children and later to their granddaughter. Because of Lela's sacrifices and significant contributions to the family, David has a much greater earning capacity than does Lela. "It is inequitable upon dissolution to saddle a party with the burden of her reduced earning potential and to allow the other party to continue in the advantageous position he reached through their joint efforts." Reynard I, 344 Ill. App. 3d at 792, 801 N.E.2d at 596. The trial court did not abuse its discretion in awarding Lela $12,500 per month in maintenance for 111 months where the parties enjoyed a high standard of living and there is sufficient income to sustain that standard for both parties. The majority outrageously claims, "Lela made important contributions to the business in its early years, but she has been compensated for those contributions." Slip op. at 6. Au contraire, Lela has not been compensated for those contributions. She created that family business side by side with her husband since high school. David and Lela even worked for nothing for years to get that business off the ground. Lela also worked for years as a grocery store clerk to provide the family health insurance. Lela gave up a career in education to work for her family, to raise her family, and to raise a disabled granddaughter, all with David's agreement and encouragement. Lela gave up no less than the wives in Rubinstein

- 15 -

and Mayhall, and she was just as disadvantaged by the marriage in comparison to David as were those wives in comparison to their husbands. She is a 52-year-old uneducated woman in the process of obtaining a real-estate license, hoping to earn $20,000 a year. David, on the other hand, earns $31,124 per month, and the business retains earnings regularly on a yearly basis in excess of half a million dollars. Lela deserves more than a property settlement. Lela deserves the maintenance the trial court awarded to sustain her lifestyle.

For these reasons, I would affirm the trial court's judgment.